Anthony WARREN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49S00–9905–CR–307.

Supreme Court of Indiana.

March 23, 2000.

Annette K. Fancher, Law Office of Annette Fancher–Bishop, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice

After a trial by jury, Anthony Warren was convicted of murder and also adjudged a habitual offender. In this direct appeal, Warren raises six issues for our review which we rephrase as follows: (1) did the trial court err in allowing a lay witness to testify that a substance found on Warren's discarded clothing appeared to be blood, (2) did the trial court err by admitting into evidence a tape recording and various photographs that were not provided to Warren in accordance with local rules of discovery, (3) did the trial court err in denying Warren's motion for a mistrial on grounds that the State mischaracterized the evidence during closing argument, (4) did the trial court err by refusing to give Warren's tendered instruction on reasonable doubt, (5) was the evidence sufficient to sustain the conviction, and (6) did the trial court err during the habitual offender phase of the trial by refusing to give Warren's tendered instruction concerning the role of the jury as finder of law as well as the facts. We affirm the conviction for murder, but reverse the habitual offender adjudication.

The record shows that on August 2, 1998, Anthony Warren, Lynn Coe, and Darlene Massengill engaged in a night of heavy drinking. The next morning, Coe found Massengill dead in his one-room apartment. He also discovered that his handgun was missing. A later autopsy revealed that Massengill had died as a result of a single gunshot wound to the head. Coe called 911 and initially told police that he saw Anthony Warren shoot Massengill. At trial, he recanted and testified that he had consumed a substantial quantity of alcohol, passed out in his bed, and therefore saw nothing.

On the same morning Massengill's body was discovered, Warren appeared at the apartment he shared with his girlfriend Charlene Davis. The record shows that Warren had tried to get Davis to purchase a gun for him because Massengill and her family had been causing problems for Warren. In a statement given to police, Davis said that when Warren arrived at the apartment he showed her a handgun and said, "he knows he is getting ready to go to jail." R. at 356. According to Davis, Warren mentioned something about getting rid of gunshot residue. He then removed his clothing, poured bleach on them, and tossed them into a dumpster behind the apartment building. Warren also told Davis that she did not have to worry about Massengill bothering them anymore.

On August 4, 1998, the State charged Warren with murder and thereafter alleged that he was a habitual offender. On August 5, 1998, the State filed a Notice of Discovery Compliance listing the crime scene and autopsy photographs as possible exhibits. On December 11, 1998, the State filed another Notice of Discovery Compliance listing a 911 tape recording as additional discovery. After a jury trial Warren was convicted as charged and adjudged a habitual offender. The trial court sentenced Warren to sixty-five years for murder, enhanced by an additional thirty years for the habitual offender adjudication. This direct appeal followed. Additional facts are set forth below where relevant.

**I.**

Warren first complains about the testimony given by one of the officers summoned to the crime scene. The facts are these. The State called to the stand Officer William Pender who identified himself as a "crime scene specialist." The record

does not reveal the nature of his training or the scope of his duties and responsibilities. In any event, Officer Pender testified that he had been instructed to go to the scene to take photographs and to recover items of clothing from a dumpster. One of the items Officer Pender recovered was a tee shirt that was introduced into evidence. Upon questioning by the State, and over Warren's objection, Officer Pender testified "[t]here appeared to be possible blood on the back of the tee shirt and also on the left and right sleeve of the tee shirt." R. at 326. Officer Pender acknowledged he was not a serologist and Warren cross-examined him on that point. Citing Indiana Evidence Rule 701, Warren contends the trial court erred in allowing the officer to testify concerning what a stain "appeared to be" because the testimony was not "rationally based on the perception of the witness" and was not "helpful to an understanding of the witness's testimony or the determination of a fact in issue." *Id.*

■ Rule 701 is consistent with the state of the law as it existed prior to the adoption of the Indiana Rules of Evidence. It is true that in some cases an opinion offered by a lay witness cannot be said to be "rationally based on the perception of the witness" absent evidence that the witness possesses specialized knowledge. Such witnesses are often called "skilled lay observers." *See, e.g., Wagner v. State,* 474 N.E.2d 476, 494 (Ind.1985) (police officer could state an opinion concerning what other officers were doing at a crime scene because of his experience as a member of the investigating team); *Dudley v. State,* 480 N.E.2d 881, 898 (Ind.1985) (police officer may properly testify about the appearance of powder burns based upon his training and experience); *Almodovar v. State,* 464 N.E.2d 906, 910–11 (Ind.1984) (witness familiar with guns could give an opinion on caliber of gun observed). However, we have also held that "any witness may testify as to the appearance of an object observed." *Hill v. State,* 267 Ind. 480, 487,

371 N.E.2d 1303, 1307 (1978) (permitting a police officer to testify that there were men's clothes in the apartment of the defendant's girlfriend, although he was not an expert on clothing).

In this case Officer Pender did not testify that he in fact observed blood on the tee shirt he recovered. Rather, the officer merely testified that the stain he observed "appeared to be" blood. He is permitted to testify concerning the appearance of an object observed. *Hill,* 267 Ind. at 487, 371 N.E.2d at 1307. The fact that the officer was not a serologist or had no special expertise in this area goes to the weight and not the admissibility of his testimony. *Id.* We find no error on this issue.

## II.

Warren next contends the trial court erred by allowing into evidence, over his objection, Coe's 911 tape recorded telephone call, photographs of the autopsy, and photographs taken of the clothing recovered from the dumpster because the State failed to comply with local discovery rules. Warren concedes the State made him aware of the photographs' existence through its discovery response. However, he argues the State did not produce the photographs until the morning of trial. As for the 911 tape, the record shows the State filed a discovery pleading four days before trial indicating that the tape was "available for review." Warren argues the State violated the local rules of discovery and thus the photographs as well as the tape should have been excluded as evidence at trial.

■ The State's exhibits were covered by the local "Automatic Discovery Rule" which provides in pertinent part "the court at the initial hearing will automatically order the State to disclose and furnish all relevant items and information under this Rule to the defendant(s) within twenty (20) days from the date of the initial hearing...." Rule 7, Rules of Organization and Procedure of the Marion Superior Court, Criminal Division, INDIANA

RULES OF COURT, (1998). The initial hearing date was August 4, 1998. The State filed its "Notice of Discovery Compliance" on August 5, 1998, which provided in relevant part: "Copies of the following have been forwarded to defense counsel: ... The crime scene & autopsy photographs, along with the crime scene video may be viewed by contacting the undersigned." R. at 27, 28. Although the Notice seems to suggest that the photographs were forwarded to defense counsel, Warren contends they were not, and the State does not argue otherwise. Apparently they were simply made available for review. The local rules anticipate that discovery items are to be "disclose[d] *and* furnish[ed]." *Id.* (emphasis added). Although disclosed, the photographs were not furnished as the rule requires. As for the 911 tape, obviously it was neither disclosed nor furnished "within twenty (20) days from the date of the initial hearing." *Id.*

■■ It is apparent the State violated the local discovery rules. This is a matter of continuing concern to this court. *See Williams v. State*, 714 N.E.2d 644, 649 n. 3 (Ind.1999); *Goodner v. State*, 714 N.E.2d 638, 642–43 (Ind.1999). However, as a general proposition, the proper remedy for a discovery violation is a continuance. *Cliver v. State*, 666 N.E.2d 59, 64 (Ind. 1996). Failure to alternatively request a continuance upon moving to exclude evidence, where a continuance may be an appropriate remedy, constitutes a waiver of any alleged error pertaining to noncompliance with the court's discovery order. *Martin v. State*, 535 N.E.2d 493, 497 (Ind. 1989). Here, Warren moved to exclude the photographs and the 911 tape, but he did not request a continuance. Accordingly this issue is waived. *Id.*

■ Waiver notwithstanding, Warren still cannot prevail. Exclusion of evidence as a remedy for a discovery violation is only proper where there is a showing that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial. *Cliver*, 666 N.E.2d at 64; *Smith v. State*, 702 N.E.2d 668, 675 (Ind.1998). In this case, Warren has not demonstrated that the State's action was deliberate. In addition, although we do not condone the State's action, we do not find it reprehensible. *Compare e.g., Lewis v. State*, 700 N.E.2d 485, 487 (Ind.Ct.App.1998) (finding reprehensible State's disclosure of fingerprint evidence two days before trial after previously agreeing there was no such evidence); *Long v. State*, 431 N.E.2d 875, 877 (Ind.Ct.App.1982) (finding flagrant misconduct in the State's failure to provide defendant with a copy of his statement given to police shortly after his arrest). Here, even though the State did not actually furnish the photographs to Warren, he was aware of their existence and could have reviewed them in advance of trial. This is not a case of the State ambushing the defense or failing to disclose discovery items.

■ As for the 911 tape, the State's supplementary discovery notice specifically provides "it has learned of additional items of discovery." R. at 64. The record also shows that on the Friday evening prior to trial the deputy prosecutor called defense counsel at his home to advise him of the tape. Although Warren complains in his brief that the State had possession of the 911 tape since August, neither the supplemental notice nor the telephone call to defense counsel support that assertion. Rather, the inference here is that the prosecutor apprised Warren about the tape shortly after he obtained it. There is no error when the State provides a defendant evidence as soon as the State is in possession of requested evidence. *See Grooms v. State*, 269 Ind. 212, 219, 379 N.E.2d 458, 463, (1978) (no .discovery violation where the trial court found police investigative reports had never been in the possession of the prosecutor's office, nor in the prosecutor's file); *Denney v. State*, 695 N.E.2d 90, 94 (Ind.1998), (no discovery violation where the State did not disclose results of blood analysis because State did not get

results until four days after trial concluded. "[T]here is no obligation on the State to do anything other than turn the report over to [Defendant] when it became available."). Because Warren has not demonstrated that the State's conduct was deliberate or reprehensible, the trial court did not err in failing to exclude the evidence as a sanction for the State's discovery violation.

### III.

■ Warren next contends the trial court erred when it denied his motion for mistrial made during the course of the State's closing argument. Warren's contention is based on the following facts. Two of the State's key witnesses were Charlene Davis and Lynn Coe. Davis testified by way of deposition and Coe testified at trial. Prior to trial, both witnesses gave unsworn statements to the police implicating Warren in Massengill's death. In her deposition testimony, Davis recanted much of her pre-trial statement. The statement itself was not introduced into evidence as an exhibit. However, both the State and Warren quoted excerpts from the statement while questioning Davis. The same course of events occurred with Coe's trial testimony. Upon examination by the State, Coe acknowledged giving a statement to police telling them he saw Warren shoot Massengill in the head, R. at 217, 219; that the gun Warren used belonged to and was taken from Coe, R. at 220, 221; and that after Warren fired the gun at Massengill, he held the gun on Coe and warned him not to call the police, R. at 219, 220. As with Davis, Coe recanted his pre-trial statement, testifying that he had lied, and in fact he had been drunk on the night in question, had passed out, and neither saw nor heard anything. During closing arguments the State began to refer to Coe's now recanted pre-trial statements. More specifically the State told the jury:

"Detective Tudor did an excellent job investigating this case. A case like this, you get to the witness immediately and he did that as soon as he could. And he got to them that same day. Why does a detective want to talk to a witness on the same day an incident happened? Number one, so the events are fresh in that witness's mind, and number two, probably more importantly, so that witness doesn't have time to think and let human nature take its course and have that witness maybe sanitize their version of events, make it look so it's not so bad for themselves or think up a lie. When Detective Tudor got to Lynn Coe, got his taped statement that day, and Lynn Coe says he saw the Defendant Anthony Warren shoot Darlene Massengill in the head, of course now . . . ."

R. at 406. At that point Warren objected and requested to be heard outside the presence of the jury. The trial court excused the jury and Warren moved for mistrial on the grounds that "Lynn Coe didn't say that at all in his statement." R. at 406. The trial court disagreed with Warren's recollection of the evidence and denied the motion. Trial resumed and the State completed its final argument.

■ Warren contends the trial court erred in denying his motion. He argues that because the recanted statements were admitted for impeachment purposes only, the State improperly implied that the jury could treat the statements as substantive evidence. We first observe that Warren makes a different argument on appeal than he made before the trial court. A party may not object on one ground at trial and then assert a different ground on appeal. *Willsey v. State*, 698 N.E.2d 784, 793 (Ind. 1998). This issue is thus waived for review. *Id.* Waiver notwithstanding, Warren cannot prevail on the merits of his claim. A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *Deckard v. State*, 670 N.E.2d 1, 4 (Ind. 1996). However, the premise underlying a motion for mistrial presupposes that an error of some type occurred in the first instance. Here there was no error. Con-

trary to Warren's assertion, the State did not imply that the jury could treat Coe's recanted statement as substantive evidence. Our review of the State's closing argument shows that the State merely contrasted Coe's trial testimony with his out-of-court statement and argued why Coe would give one account of events shortly after Massengill's body was discovered and another account at the time of trial. Final argument need not consist of a bland recitation of the evidence devoid of thought-provoking illustration. *Clark v. State,* 597 N.E.2d 4, 10 (Ind.Ct.App.1992). A prosecutor's final argument may "state and discuss the evidence and reasonable inferences derivable therefrom so long as there is no implication of personal knowledge that is independent of the evidence." *Hobson v. State,* 675 N.E.2d 1090, 1096 (Ind.1996). Here, the State remained well within the bounds of permissible closing argument. The trial court properly denied Warren's motion for mistrial.

### IV.

Next, Warren contends the trial court erred by refusing to give his tendered instruction on reasonable doubt. The trial court rejected Warren's tendered instruction and instead gave the reasonable doubt instruction sanctioned by this Court in *Winegeart v. State,* 665 N.E.2d 893 (Ind.1996). Warren's tendered instruction was substantially the same as the *Winegeart* instruction. Warren concedes in his brief that this Court has held a trial court does not abuse its discretion in rejecting a tendered instruction that is already covered by others given at trial. *See, e.g., Schweitzer v. State,* 552 N.E.2d 454, 457 (Ind.1990). Nonetheless, Warren complains the trial court abused its discretion here because it expressed uncertainty about whether it was permitted to give Warren's tendered instruction or whether it was bound to give the *Winegeart* instruction. According to Warren, the trial court's uncertainty indicated an "ignorance of the law." Brief of Appellant at 27. We reject outright Warren's argument. In

*Winegeart,* after an exhaustive and careful analysis, a majority of this court quoted with approval the Federal Judicial Center's proposed reasonable doubt instruction. *Id.* at 902. In so doing, the majority declared: "[w]e therefore authorize and recommend ... that Indiana trial courts henceforth instruct regarding reasonable doubt by giving [the Federal Judicial Center's proposed reasonable doubt instruction] preferably with no supplementation or embellishment." *Id.* That is exactly what the trial court did here. Regardless of the trial court's expression of uncertainty, we fail to see how the trial court could have abused its discretion by doing that which this Court authorized and recommended it to do. On this issue, Warren's argument fails.

### V.

Warren also challenges the sufficiency of the evidence. More specifically Warren contends there was no direct evidence showing he murdered the victim and, according to Warren, the circumstantial evidence was not sufficient. When reviewing a claim of insufficient evidence, we consider only evidence that supports the verdict, and draw all reasonable inferences therefrom. *Richeson v. State,* 704 N.E.2d 1008, 1011 (Ind.1998). We do not reweigh the evidence nor do we judge the credibility of witnesses. *Id.* We uphold a conviction if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

It is true there was no direct evidence that Warren murdered the victim. However, circumstantial evidence alone is sufficient to sustain a conviction. *Kriner v. State,* 699 N.E.2d 659, 663 (Ind. 1998). The evidence in this case included testimony that Warren and Massengill were together the night before her body was discovered and that for some period of time Warren had attempted to obtain a handgun because Massengill and her fami-

ly had caused him trouble. On the morning Massengill's body was discovered—with a gunshot wound to the head, Warren appeared at the apartment he shared with his girlfriend, showed her a handgun, told her he knew he was going to jail, mentioned something about getting rid of gunshot residue, then removed his clothing, poured bleach over them and threw them in a dumpster. This circumstantial evidence was sufficient to sustain Warren's murder conviction.[1]

## VI.

For his final contention, Warren complains that the trial court erred in instructing the jury during the habitual offender phase of the trial. The record shows that at the beginning of the guilt phase of trial, which lasted two days, the trial court gave, among others, the following preliminary jury instruction:

> By law, you are the exclusive finders of fact. It is your duty to determine the facts of this case.... You are also the finders of the law that applies to this case, being guided by the instructions given by the judge. You should however, find both the law and the facts as they are, not as you would like them to be.

R. at 68. After the guilt phase of the trial concluded, the trial court gave its final jury instructions, which did not include an instruction similar to the above-quoted one. After deliberation the jury returned a verdict of guilty of murder. Before the habitual offender phase of trial began, Warren tendered the following instructions:

> Under the Constitution of Indiana, the jury is given the right to decide both the law and the facts. Fulfilling this duty, you are to apply the law as you actually find it and you are not to disregard it for any reason. The instructions of the court are your best source for determining what the law is.
>
> * * *
>
> You are the exclusive and sole judges of what facts have been proven and you may also determine the law for yourselves. This statement does not mean that you have the right to disregard the law or set it aside to make your own law. You should determine the law as it is an act of our legislature of the state and considered and interpreted by higher courts of records. In that way you have

1. Although the circumstantial evidence in this case was sufficient to sustain the conviction, we observe that Warren did not request a limiting instruction concerning Coe's recanted statement. Under the old "Patterson Rule" an out-of-court statement not given under oath could be considered as substantive evidence so long as the declarant was available at trial for cross-examination. *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (1975). As a result of this court's opinion in *Modesitt v. State*, 578 N.E.2d 649 (Ind.1991) and the later adoption of the Indiana Rules of Evidence, the "Patterson Rule" has been completely abrogated. Consequently, regardless of whether the declarant is available at trial for cross-examination, a hearsay statement is not ordinarily admissible as substantive evidence. Indiana Evidence Rule 801(d)(1)(A) provides in relevant part that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... inconsistent with declarant's

testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition[.]". Because Coe's prior statement was not given under oath it was not admissible under Rule 801. Rather, the statement was admissible only for impeachment purposes. *Humphrey v. State*, 680 N.E.2d 836, 838 (Ind.1997). However, in order to alert the jury to the limited purposes for which the statement could be used, Warren was required to request a limiting instruction. *Humphrey*, 680 N.E.2d at 839, 840. Warren made no such request and a limiting instruction was not given. The trial court was not required to give one *sua sponte*. *Id.* Thus, it is conceivable that the jury may have relied on Coe's recanted statement as direct evidence of Warren's guilt. Again, however, the circumstantial evidence in this case was sufficient to sustain the jury's verdict. And Warren has waived any error based on the absence of an admonition. *Id.*

the right to determine the law for yourselves, but not to make your own laws. Supp. R. at 1. The trial court refused to give Warren's tendered instructions, declaring instead that its preliminary instruction given before the guilt phase of the trial adequately covered the role of the jury as the finder of both the law and the facts. The record shows the preliminary instructions as well as the habitual offender final instructions were sent in with the jury during its habitual offender deliberations. Among other things, the trial court instructed the jury: "[I]n determining whether the defendant is or is not an habitual offender, you should consider all the instructions hereinbefore read to you by the court as applicable." R. at 93. However, the trial court made no specific mention of the law and facts instruction.

■■■■ As a general proposition, jury instructions are to be read as a whole. *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995). Indeed we have held "both preliminary and final instructions are not to be considered in isolation, but as a whole and with reference to each other." *Bonham v. State*, 644 N.E.2d 1223, 1227 (Ind.1994); *see also Clark v. State*, 561 N.E.2d 759, 764 (Ind.1990) (no fundamental error in failing to explicitly inform the jury during the habitual offender phase of trial that it was the judge of the law and facts where similar instruction given to the jury on more than one occasion). Nonetheless, in the context of a civil case we observed:

> The functions served by preliminary and final instructions differ. Preliminary instructions, read to the jury immediately after the jury is selected and sworn, are designed to inform the jury of the issues which it must ultimately decide and some of the legal principles which it may

need to decide those issues. Final instructions, read to the jury immediately before it retires to deliberate and decide the issues, are designed to inform the jury on all relevant legal principles needed to decide those issues. These functions are not identical and the function of final instructions is not fulfilled by omitting an applicable principle of law merely because it was covered in the preliminary instructions.

*Peak v. Campbell*, 578 N.E.2d 360, 362 (Ind.1991). This observation is instructive here. This is especially so considering the constitutional principle at stake and the severity of the penalty for being a habitual offender. We amplified this point in *Parker v. State*, 698 N.E.2d 737, 743 (Ind. 1998), a case factually similar to the one before us. In *Parker*, the trial court gave two instructions that informed the jury it was the judge of the law and facts. *Id.* at 742. Both instructions were read as preliminary instructions at the beginning of the guilt phase of the trial and sent in with the jury during the guilt phase deliberations. One of the instructions impermissibly impinged upon the jury's role under Art. I, § 19 of the Indiana Constitution[2] by directing the jury to determine the defendant to be a habitual offender upon finding that the State properly proved two prior felonies. *Id.* The trial court overruled defendant's objection to the instruction and also refused to re-read the guilt phase instruction. *Id.* For both reasons, we found reversible error. We also noted the two week delay between the guilt and habitual offender phase of trial.

■■■ Here, unlike *Parker*, the trial court's preliminary instruction did not impermissibly impinge upon the jury's role under Art. I § 19[3]; and the elapsed time

2. Article I, § 19 of the Indiana Constitution provides, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

3. The trial court's preliminary instruction is consistent with existing Indiana authority which generally advises the jury that its re-

sponsibility is limited to finding the law as it exists and not disregarding the law or setting it aside. There is however, an argument that the framers of the Indiana Constitution intended that Art. I § 19 afford the jury the right to set aside the law if their conscience so dictates. *See* Honorable Robert D. Rucker, *Right to Ignore the Law, Constitutional Enti-*

between the guilt and habitual offender phase of trial was only two days. Nonetheless, as we indicated in *Parker*, because Art. I § 19 "is so firmly engrained as a fundamental principle in Indiana's constitutional law, it was important that the court re-read the guilt phase preliminary instruction during the habitual offender phase." *Id.* at 743. We hold today, that when a defendant requests the trial court to instruct the jury on its role as finders of law and fact during the habitual offender phase of a trial, it is reversible error for the trial court to refuse the request. The court committed reversible error in this case. Accordingly, the defendant is entitled to have the habitual offender determination vacated.

In conclusion, we affirm the murder conviction but vacate the habitual offender adjudication. The case is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and BOEHM, JJ., concur.