**Carl MOTE, Jr., Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 25A03–0112–CR–411.**

Court of Appeals of Indiana.

Sept. 25, 2002.

**688**

C. Richard Oren, Rochester, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Carl Mote, Jr. ("Mote") appeals from his jury conviction for Child Molestation,[1] as a Class C felony, in the Fulton Superior Court. Mote was sentenced to the Department of Correction for eight years executed. Mote raised three issues on appeal, but we find the following one dispositive: whether the trial court abused

1. Ind.Code § 35–42–4–3(b) (1998).

2. In his Polygraph Examination Report, Officer Brinson wrote that "[d]ue to the pre-test

its discretion when it denied Mote's Motions for Mistrial.

We reverse.

### Facts and Procedural History

The facts most favorable to the trial court's decision reveal that Mote filed a Motion in Limine on September 5, 2001, stating that "Defendant has reason to believe and does believe that the State intends to offer evidence of a prior arrest or arrests, and/or prior conviction or convictions of the offense of child molestation or fondling." Appellant's App. p. 45. Mote's motion explained that such evidence is inadmissible because the State did not comply with Indiana Code section 35–37–4–15, nor did it supply reasonable notice of its intent to use the prior arrests or convictions pursuant to Indiana Evidence Rule 404(b), and Mote had not been convicted of an infamous crime. *Id.* The parties agreed to the Motion in Limine on the first day of trial, September 6, 2001, before jury selection. *Id.* at 96; Tr. pp. 3–4.

At trial, the State played a redacted videotape recording made of Mote and Detective Robert Brinson, a polygraph examiner with the Indiana State Police. The tape was created on April 14, 2000, prior to Mote's scheduled polygraph test.[2] Before and after the jury watched and heard the videotape, Mote renewed his objection as to portions of the tape that he believed violated his Motion in Limine. Tr. pp. 239, 241. Mote also submitted at least four motions for mistrial based upon the alleged improper references to Mote's prior arrests and/or convictions contained on the redacted videotape shown to the jury. Tr. p. 241.

admissions[,] no polygraph charts were attempted." Appellant's App. p. 108.

The trial court judge denied Mote's mistrial motions, finding that Evidence Rule 404(b) was not violated because the redacted videotape contained no specific references to any arrests or convictions. Additionally, the trial court judge found that there was only a reference to the fact that Mote had been on probation, and a general reference to his past criminal record, which the trial court stated, "floated past rather quickly," and was "relative[ly] innocuous." Tr. p. 248.

After deliberations, the jury found Mote guilty as charged. Tr. p. 398. Then on October 8, 2001, after a hearing, the trial court sentenced Mote to the Department of Correction for eight years executed, with thirty-four days of credit for time already served. Appellant's App. p. 151. Mote filed a Motion to Correct Error on October 30, 2001, which was denied on December 6, 2001. Mote now appeals.

### Discussion and Decision

■ Mote argues that the trial court abused its discretion when it denied his mistrial motions because admission of portions of the videotape that referred to his prior arrests and/or convictions violated Indiana Evidence Rule 404(b). To prevail, Mote must prove that the conduct in question "was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected." *Mickens v. State*, 742 N.E.2d 927, 929 (Ind.2001) (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind.1989) (citation omitted)). "The gravity of the peril is determined by the probable and persuasive effect on the jury's decision." *Strowmatt v. State*, 686 N.E.2d 154, 157 (Ind.Ct. App.1997) (citation omitted).

■ Granting a mistrial is an extreme remedy, "warranted only when less severe remedies will not satisfactorily correct the error." *Banks v. State*, 761 N.E.2d 403, 405 (Ind.2002) (citing *Warren v. State*, 725

N.E.2d 828, 833 (Ind.2000) (citation omitted)). Additionally, a properly submitted admonition to the jury is presumed to cure any error in admission of evidence. *Id.* (citing *Heavrin v. State*, 675 N.E.2d 1075, 1084 (Ind.1996)). On the other hand, the admission of evidence of prior arrests and/or convictions is extremely prejudicial, and will not be allowed unless a strong showing of probative value can be made. *See* Ind. Evidence Rule 404(b); *Strowmatt*, 686 N.E.2d at 157 (citation omitted).

In this case, according to Mote, the redacted videotape contained the following twelve references to his prior criminal history in violation of Indiana Evidence Rule 404(b):

1. Officer Brinson stated: "I have a criminal history—no—where did I get that word,—personal history program . . . ."

2. Officer Brinson stated: "What you have done in the past [Mote], is in the past. It has nothing to do with what we are going to test you with today. Understand that."

3. Officer Brinson stated: "[W]hether there is someone that has an opinion that—I think all molesters do that again—is not what we are going to test you about."

4. Officer Brinson stated: "I am not going to judge you on anything you've done in the past. That's of no consequence to this test at all."

5. Mote stated in response to Officer Brinson: "Let's see, I was in jail—they sent me to jail and I had to spend the night [in a hospital] there . . . ."

6. Mote stated in response to Officer Brinson: "Why I am here is because at my last probation meeting, the detective—I forgot his name—a Detective Lawson?—Lawson, was

there and said he had been investigating for the past three months."

7. Officer Brinson stated: "You might feel that way with what you just told me. You might feel uncomfortable. Why are we in this conversation anyway? Maybe I shouldn't. Of all people, I have had a problem in the past. Others are going to view this pretty negatively. I'd feel guilty about even talking about it."

8. Office Brinson stated: "I think it's got something to do with your past. I think it's got something to do with not having this affectionate attention. You feel down on it—you had a weak moment. It's not something you planned at all. And if that's what it is, let it be that."

9. Officer Brinson stated: "You're scared." Mote responded: "I don't want to go back to prison."

10. Officer Brinson stated: "I have a lot of people that have the guilt in them—they've done it before and they're trying to say—they're saying to themselves I don't want to do what I'm thinking about doing—right—that's what's really coming. That's the truth of it, OK? [A]nd you're admitting that. That's a tough one to admit."

11. Officer Brinson stated: "Maybe they are going to offer you some help, some programs, some counseling, or order you—that's a better way of saying it—that you get those things, because you need them. They're going to look at your past record and say—do you need them?—it's obvious that you got a problem here. You can't help it. Your own records instead of being negatives will be very much positives. This man's got some

problems, and he, unfortunately didn't meet a loving woman in the last six years, he's not had one, it's—shit—went the wrong way. Don't let that one little thing get you in trouble."

12. Officer Brinson stated: "If you want the system to bite you, stay on it, and you'll do it, you know, you've been there, I don't have to tell you nothing."

Br. of Appellant at 12–14.

■ The State responds that it was well within the trial court's discretion to deny Mote's motions for mistrial based upon the court's finding that there was no reference to any specific event, but rather, general references that were relatively innocuous. The State continues that Mote failed to show that the references indicate the nature of the past offenses. Lastly, the State responds that the trial court properly considered the impact of the references on the jury and correctly determined that denying Mote's motions for mistrial was appropriate. Br. of Appellee at 8.

Before the redacted videotape was played for the jury, the trial court judge explained:

There are some issues on the tape with matters that are simply inadmissible for a trial. And so during the, uh, playing of the tape for you you will see that there are some parts of it that are edited out and uh, some parts I've asked [the State] to simply mute the sound. Uh, that's been done with the court's knowledge and understanding and direction, frankly.

Tr. p. 240. Promptly after the video was played for the jury, the trial court judge gave the jury a brief recess, and it was at this point in the proceeding that Mote's counsel argued the motions for mistrial, mentioning a few specific offending refer-

ences that had been played to the jury. The trial court judge then denied the motions based upon his finding that the references were not to specific events, and the probation reference and general reference to Mote's past record "floated past rather quickly[,]" and were relatively innocuous. Tr. p. 248. Importantly, when the jury returned from its recess, the trial court judge did not admonish them to disregard the references in the videotape to Mote's prior arrests and convictions.

By allowing the references to Mote's past arrests and convictions without admonishment, the possible and probable effects of those references in all likelihood caused the jury's determination of innocence or guilt to be prejudiced to the point of placing Mote "in a position of grave peril to which he should not have been subjected." *Strowmatt*, 686 N.E.2d at 157 (citation omitted). The references were simply too prejudicial to Mote, and increased the burden on the defense too much to allow Mote's conviction to stand. Under these facts and circumstances, we conclude that the trial court abused its discretion when it denied Mote's motions for mistrial.

Reversed.

BAILEY, J., and SULLIVAN, J., concur.