Anthony D. SHOUSE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 15A05–0505–CR–287.

Court of Appeals of Indiana.

June 20, 2006.

Transfer Denied Aug. 17, 2006.

Alison T. Frazier, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Anthony Shouse ("Shouse") appeals his convictions for auto theft and two counts of resisting law enforcement arising from his actions in stealing a truck and then leading several law enforcement agencies on a 100–mile–per–hour chase. Shouse is not entitled to a new trial based on the deputy prosecutor's conduct toward an attorney of a defense witness, which resulted in the witness invoking the Fifth Amendment and refusing to testify at trial. Any error is harmless because of the overwhelming evidence of Shouse's guilt. Shouse was not entitled to an instruction on conversion as a lesser-included offense of auto theft because there is no serious evidentiary dispute that Shouse acted with intent to deprive the victim of the truck's value or use. Shouse's two convictions for resisting law enforcement do not violate federal double jeopardy principles because one conviction is for fleeing and the other is for forcibly resisting or interfering, which are different species of resisting law enforcement. Although the trial court erred in refusing to instruct the jury during the habitual offender phase of trial that it is the judge of both the law and the facts, the error is not reversible. Finally, in light of the nature of the offenses and Shouse's extensive criminal history, his eight and one-half year sentence is not inappropriate. We therefore affirm the trial court in all respects.

### Facts and Procedural History

The facts most favorable to the verdict reveal that on December 8, 2004, Shouse and his sister, Melissa Chandler ("Melissa"), walked from their Dillsboro, Indiana, apartment to J & J Liquor Store, which was across the street, to use the pay phone. In the meantime, Kenneth Wagner ("Kenneth") left work and decided to stop at the liquor store before heading home. Kenneth, who was driving his silver 1998 Chevrolet 4–wheel–drive truck,

pulled into the parking lot and turned off his truck, leaving the keys inside. On his way into the liquor store, Kenneth noted a woman and a man, later identified at trial as Shouse, standing at the pay phone. Kenneth had never seen or spoken to them before.

Once inside the liquor store, Kenneth walked to a cooler and took a beer. One of the store employees yelled, "hey Kenny, your truck's leaving." Tr. p. 73. Kenneth proceeded to the door and saw two people driving away in his truck. Kenneth instructed the store employee to call 911 and ran outside to see where his truck was going. Kenneth went back inside the store and gave the 911 dispatcher a description of his truck. The dispatcher then put out an all-county broadcast of the truck.

Dillsboro Police Department Officer Ryan Brandt was the first officer to locate the truck. Shouse was driving the truck, and Melissa was sitting in the passenger seat. Officer Brandt was off duty, in plain clothes, and driving a marked police car with his eleven-month-old daughter in a car seat. Officer Brandt pulled in behind the truck and radioed his location to dispatch. Officer Brandt, who did not activate his lights or siren because his infant daughter was in the car, continued to follow the truck until other officers could arrive and take over for him. Officer Brandt activated his radar and clocked the truck at over 100 miles per hour.

While Officer Brandt was still following the truck, Shouse activated the right turn signal. However, the truck came to a complete stop in the middle of the turn lane. Not knowing what Shouse was going to do, Officer Brandt exited his police car and drew his side arm on Shouse. Officer Brandt identified himself as a police officer and repeatedly instructed Shouse to turn off the truck. Shouse then "peeled tires"

on the truck and sped off. *Id.* at 88. Officer Brandt returned to his car and continued following the truck.

Soon thereafter, Aurora Police Department Chief of Police Dana Cotton, Aurora Police Department Officer William Nail, Indiana State Police Trooper Vance Patton, and Dearborn County Sheriff's Deputy Jon Evans joined the pursuit, and Officer Brandt fell back. During this time, Shouse was driving the truck up to 100 miles per hour. All the police vehicles had their emergency lights and sirens activated, and all the civilian vehicles were pulling off to the side of the road, except the truck. Eventually, Chief Cotton was able to pull alongside Shouse and motioned for him to pull over. Shouse looked over at Chief Cotton, smiled, held up a can of beer, and continued driving. Then, the officers tried to box in Shouse between their vehicles. However, Shouse swung the truck into Chief Cotton's vehicle and attempted to push him off the road. Shouse then rammed into Deputy Evans, who was traveling in front of him. Deputy Evans slowed down, and Shouse rammed into him again. Deputy Evans applied his brakes, finally forcing Shouse to stop the truck. Deputy Evans and Chief Cotton drew their weapons, approached the truck, and ordered Shouse to show his hands and to exit the truck. Shouse looked at the officers, reached over, and locked the door. Deputy Evans tried to open the door, but it was locked. Shouse then grabbed a beer, turned nonchalantly to Melissa, and the two of them talked and laughed. Deputy Evans screamed for Shouse to open the door, but he refused. Shouse then looked directly at Deputy Evans, took a sip of his beer, and smiled. At this point, Deputy Evans shattered the window with the butt of his gun. Shouse began moving away from Deputy Evans, so Deputy Evans grabbed him by the hair. Deputy

Evans and Chief Cotton attempted to remove Shouse from the vehicle, but Shouse continued resisting. Officer Nail yelled TASER several times before firing his TASER at Shouse's chest. Deputy Evans and Chief Cotton were then able to remove Shouse from the truck, and he was arrested.

Shouse was transported to the Dearborn County Law Enforcement Center. Dearborn County Sheriff's Deputy William Wagner advised Shouse of his rights, and Shouse signed a written waiver of his rights. Deputy Wagner and Officer Nail then interviewed Shouse. Shouse said that he took the truck and that the truck did not belong to him. Shouse did not claim that he borrowed the truck or that he knew Kenneth. Shouse also said that he knew the police were behind him and that he had plenty of opportunities to stop the truck but did not. When asked to elaborate, Shouse explained that he and his sister went to the liquor store and that he saw the truck sitting in the parking lot with the keys in it. Shouse then entered the truck, started it, and yelled for his sister to get in. Shouse said that when he saw the police following him, he "tromped it." *Id.* at 205. Deputy Wagner also interviewed Kenneth, who said that he did not know Shouse.

The State charged Shouse with Count I: Auto Theft, a Class D felony; Count II: Conspiracy to Commit Auto Theft, a Class D felony; Count III, Resisting Law Enforcement, a Class D felony; and Count IV, Resisting Law Enforcement, a Class D felony. The State later added a habitual offender charge against Shouse. The State charged Melissa with Conspiracy to Commit Auto Theft, a Class D felony, and Reckless Possession of Paraphernalia, a Class B misdemeanor.

Two days before Shouse's trial, a deputy prosecutor deposed Melissa, and Melissa's attorney, Leslie Votaw, was present during that deposition. Shouse's attorney was also present. During her deposition, Melissa made incriminating statements regarding her drug use. At the time, Melissa had not yet gone to trial on her conspiracy and reckless possession charges.

At trial, Shouse called Melissa in his defense, and Melissa invoked the Fifth Amendment. Shouse moved for a mistrial, alleging intimidation of the witness. A hearing was then held wherein testimony was heard that during lunch break that day, Deputy Prosecutor Negangard, who did not conduct the deposition of Melissa, told Votaw that if Melissa testified on Shouse's behalf, the State could file additional drug charges against her as well as seek a habitual offender enhancement. Deputy Prosecutor Negangard had previously advised Votaw that if Melissa testified on Shouse's behalf at trial, the State could file additional drug charges against her, and Votaw had already advised Melissa of this possibility. However, Votaw claimed that this was the first time that Deputy Prosecutor Negangard had mentioned the possibility of filing a habitual offender enhancement. Nevertheless, Votaw admitted that she was well aware of this possibility because of conversations she had with Melissa about her criminal history. The trial court denied Shouse's motion for mistrial. Because Melissa invoked the Fifth Amendment, counsel for Shouse asked that Melissa's deposition be read to the jury, and the trial court granted the request. In her deposition, Melissa stated that while she was on the pay phone outside the liquor store, she saw Shouse and Kenneth talking. She further testified that when Kenneth went inside the liquor store, Shouse, who had the key to the truck in his hand, told Melissa to get into the truck. Melissa said that as they pulled out of the parking lot in the truck, Ken-

neth exited the liquor store and threw up his arms. At that point, Shouse told Melissa that he forgot to tell her that she was supposed to stay back with Kenneth at their apartment in exchange for Shouse borrowing the truck. Melissa stated that she and Shouse were on their way to Cincinnati to buy drugs when the high-speed chase ensued. Melissa thought about having Shouse let her out of the truck, but she decided to remain with him during the ordeal.

The jury found Shouse guilty of auto theft and the two counts of resisting law enforcement but not guilty of conspiracy to commit auto theft. In a separate proceeding, the jury found him to be a habitual offender. Finding one aggravator—Shouse's extensive criminal history—and no mitigators, the trial court sentenced Shouse to the maximum term of three years for auto theft, enhanced by four and one-half years for the habitual offender finding. The court also sentenced Shouse to one year on each of the resisting law enforcement convictions, to be served concurrently. The court ordered the sentences for the auto theft and resisting law enforcement convictions to be served consecutively, for an aggregate sentence of eight and one-half years. Shouse now appeals.

### Discussion and Decision

Shouse raises five issues on appeal. First, he contends that the trial court erred in denying his motion for mistrial. Second, he contends that the trial court erred in refusing to instruct the jury on conversion as a lesser-included offense of auto theft. Third, he contends that his two convictions for resisting law enforcement violate federal double jeopardy principles. Fourth, he contends that the trial court erred in refusing to instruct the jury during the habitual offender phase of trial that it was the judge of both the law and

the facts. Finally, he contends that his sentence is inappropriate. We analyze each issue in turn.

### I. Mistrial

Shouse contends that the trial court erred in denying his motion for mistrial. Specifically, he argues that a mistrial was warranted because Deputy Prosecutor Negangard threatened Melissa, which led to her refusal to testify at trial. Shouse asserts that he was denied his right to call witnesses guaranteed under the Sixth Amendment to the United States Constitution.

■■■ On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. *McManus v. State*, 814 N.E.2d 253, 260 (Ind. 2004), *cert. denied*, —— U.S. ——, 126 S.Ct. 53, 163 L.Ed.2d 83 (2005). We therefore review the trial court's decision solely for abuse of discretion. *Id.* After all, a mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation. *Id.* To prevail on appeal from the denial of a motion for mistrial, the defendant must establish that the questioned conduct "was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected." *Mickens v. State*, 742 N.E.2d 927, 929 (Ind.2001) (quotation omitted). The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the impropriety of the conduct. *Id.*

■■■ On appeal, Shouse relies on two decisions to support his argument that his Sixth Amendment right to call witnesses was violated. In the first case, *Diggs v.*

*State*, the prosecutor approached a defense witness, Harold Bowers, in the hallway just before the presentation of evidence for the defense. 531 N.E.2d 461 (Ind.1988). The prosecutor informed Bowers that if he testified to "the same statements he did in his deposition, he [would] be charged, according to his own testimony." *Id.* at 464. When called as a witness, Bowers invoked the Fifth Amendment and refused to testify. On appeal, the Indiana Supreme Court noted that "[v]arious courts have held such prosecutorial conduct to violate the due process rights guaranteed by the Fifth and Fourteenth Amendments as well as the Sixth Amendment right to compel witnesses in a defendant's favor." *Id.* Specifically, the court stated that "[a] prosecutor's warning of criminal charges during a personal interview with a witness improperly denies the defendant the use of that witness's testimony regardless of the prosecutor's good intentions." *Id.* (citing *United States v. Morrison*, 535 F.2d 223 (3rd Cir.1976)). "A prosecutor may not prevent nor discourage a defense witness from testifying." *Id.* (citing *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)).

When Bowers refused to testify, the defendant offered his deposition into evidence. The State objected, and the trial court sustained the objection. On appeal, our Supreme Court said that this also was error. *Id.* In determining whether this error was harmless, the court noted that to demonstrate reversible error, the defendant must make a plausible showing that the improperly suppressed testimony would have been materially favorable to his defense in a way that is not merely cumulative to that of available witnesses. *Id.* Because Bowers' testimony was consistent with two other witnesses' testimony, the court held that the errors were harmless. *Id.*

In the second case, *Collins v. State*, the prosecutor interviewed a defense witness, Blount, in her home regarding her potential testimony. 822 N.E.2d 214 (Ind.Ct. App.2005), *trans. denied.* After telling the prosecutor that she would testify to a version of events favoring the defendant, the prosecutor informed Blount that he would arrest her "the moment she stepped off the witness stand." *Id.* at 220 (record citation omitted). Blount then informed defense counsel that she would not testify at trial.

■ Citing *Diggs*, this Court stated that "[o]ur case law is clear that this type of threat violates the Sixth Amendment." *Id.* at 221. A fundamental element of due process of law is the right of a defendant to present witnesses in his own defense; those witnesses must be "free to testify without fear of governmental retaliation." *Id.* at 220 (quotation omitted). In determining whether this constituted harmless error, the court noted that an error is harmless when "there is no substantial likelihood the error contributed to the verdict, or, in other words, that the error was unimportant." *Id.* at 221 (quotation omitted). We held that the error was harmless because "[t]he evidence against [the defendant] is substantial, and Blount's proffered testimony is relatively insignificant in comparison." *Id.* at 223 (footnote omitted).

■ Assuming without deciding that Deputy Prosecutor Negangard's conduct toward Melissa violated the Sixth Amendment, Shouse is not entitled to relief because the error, if any, is harmless. Although Melissa did not testify at trial, her deposition was read in its entirety to the jury. Therefore, the jury was able to hear Melissa's version of the events, which, we note, was only exculpatory with regards to Shouse's auto theft conviction. Moreover, there is overwhelming evidence of Shouse's guilt for all three of his convic-

tions, including his own statements to the police, Kenneth's testimony, and the testimony of all the officers involved in the high-speed chase. Shouse has not shown that there is a substantial likelihood that the error contributed to the verdict or that the error was important. We therefore affirm the trial court on this issue.

## II. Lesser-included Offense Instruction

■ Shouse next contends that the trial court erred in refusing to instruct the jury on conversion as a lesser-included offense of auto theft. When a defendant requests a lesser-included offense instruction, a trial court applies a three-part analysis: (1) determine whether the lesser-included offense is inherently included in the crime charged; if not, (2) determine whether the lesser-included offense is factually included in the crime charged; and, if either, (3) determine whether a serious evidentiary dispute exists whereby the jury could conclude that the lesser offense was committed but not the greater offense. *Miller v. State,* 720 N.E.2d 696, 702 (Ind.1999) (citing *Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995)). If the last step is reached and answered affirmatively, then the requested instruction for a lesser-included offense should be given. *Id.*

■ Our standard of review is abuse of discretion when the trial court has made a finding on the existence or lack of a serious evidentiary dispute. *Id.* Where there is no such finding, the reviewing court makes the required determination *de novo* based on its own review of the evidence. *Id.*

■ Here, the trial court did not determine whether a serious evidentiary dispute existed because it concluded that conversion is not a lesser-included offense of auto theft. To the contrary, conversion is an inherently lesser-included offense of auto theft. *See M.Q.M. v. State,* 840 N.E.2d 441, 447 (Ind.Ct.App.2006) ("Because the crime of conversion may be established by proof of less than all the material elements of auto theft, it is an inherently lesser included offense."). Therefore, we must now determine whether a serious evidentiary dispute existed based on our own review of the evidence.

■ The only element distinguishing auto theft from conversion is whether Shouse acted with intent to deprive Kenneth of the truck's value or use. *Compare* Ind.Code § 35–43–4–2.5 *with* Ind.Code § 35–43–4–3. Our review of the evidence shows that there is no serious evidentiary dispute on this point. That is, Kenneth testified that he did not know Shouse or Melissa, that he had never talked to them before, and that he did not give them permission to take his truck. Upon seeing his truck leave the parking lot, Kenneth immediately called 911. When the officers spotted Shouse, Shouse began leading them on a high-speed chase and did not stop the truck despite many opportunities to do so. Shouse slammed the truck into police vehicles, and when the truck finally came to a stop, Shouse refused to exit. There is no serious evidentiary dispute that Shouse acted with intent to deprive Kenneth of the truck's value or use.[1] The trial court did not err in refusing to instruct the jury on conversion as a lesser-included offense of auto theft.

---

1. Shouse claims that there is a serious evidentiary dispute based on the jury's question, "If the defendant and the truck owner have an agreement on the truck use and the owner changes his mind at what point does it turn into theft?" Tr. p. 373. As the trial court pointed out, the jury's question indicated they were speculating on a matter that was not in evidence. *Id.* at 373–74.

### III. Double Jeopardy

Shouse next contends that his multiple convictions for resisting law enforcement "constitute[ ] multiple punishments for a single offense in violation of his Fifth Amendment protection against double jeopardy as found in the United States Constitution." Appellant's Br. p. 19.

■ Here, Shouse was charged with and convicted of two counts of resisting law enforcement. Count III alleged that Shouse fled from law enforcement in a vehicle, Appellant's App. p. 180, and Count IV alleged that Shouse forcibly resisted or interfered with law enforcement by ramming the truck into police vehicles, Appellant's App. p. 9. *Compare* Indiana Code § 35–44–3–3(a)(3) (fleeing) *with* I.C. § 35–44–3–3(a)(1) (forcibly resisting or interfering). This Court has recently observed that resisting law enforcement by fleeing is a different "species" from resisting law enforcement by force. *Arthur v. State,* 824 N.E.2d 383, 386 (Ind.Ct.App.2005), *trans. denied.* As a result, we held that there is no federal double jeopardy violation where a defendant is convicted of resisting law enforcement by fleeing and resisting law enforcement by force. *Id.; see also Williams v. State,* 755 N.E.2d 1183, 1186 (Ind.Ct.App.2001) ("A defendant may be convicted of multiple counts of resisting law enforcement when he has committed more than one of the acts enumerated under I.C. § 35–44–3–3"; in this case, fleeing under subsection (a)(3) and forcibly resisting under subsection (a)(1)). There is no federal double jeopardy violation; therefore, we affirm Shouse's convictions for resisting law enforcement.

### IV. Habitual Offender Phase Instruction

Shouse next contends that the trial court erred in refusing to re-read an instruction during the habitual offender phase of trial.

Specifically, Shouse wanted the trial court to re-read Final Instruction No. 21, which provided that the jury was the judge of both the law and the facts as set forth under Article I, Section 19 of the Indiana Constitution. The trial court refused to re-read this instruction because the court had just read it during final instructions of the guilt phase of trial, it advised the jury that the instructions they had received during the guilt phase applied to the habitual offender phase, and the jury had the instruction in the jury room for use during deliberations. Shouse asserts that pursuant to *Warren v. State,* 725 N.E.2d 828 (Ind.2000), we should vacate his habitual offender adjudication.

In *Warren,* the defendant asked the trial court to instruct the jury on its role as finders of the law and the facts during the habitual offender phase of trial, and the court refused to do so because it had given this as a preliminary instruction at the beginning of the guilt phase of trial, which lasted two days. *Id.* at 836. In addition, the trial court had instructed the jury to consider all the instructions when arriving at its verdict, and the jury had this instruction in the jury room for use during deliberations. On appeal, the Indiana Supreme Court said:

> We hold today, that when a defendant requests the trial court to instruct the jury on its role as finders of law and fact during the habitual offender phase of a trial, it is reversible error for the trial court to refuse the request. The court committed reversible error in this case. Accordingly, the defendant is entitled to have the habitual offender determination vacated.

*Id.* at 837.

This case is distinguishable from *Warren.* Here, the trial court gave the Section 19 instruction during final instructions, not

preliminary instructions, and the habitual offender phase was held immediately after the jury announced its verdicts. In *Warren,* the instruction was given during preliminary instructions, and two days elapsed between the guilt and habitual offender phases of trial. In addition, during closing argument for the habitual offender phase of trial in this case, counsel for Shouse reminded the jury:

> You can consider your final instructions from the trial when you go back to the jury room. One of those instructions is number 21 and I would like you to consider that instruction. Since this is a criminal case the Constitution of the State of Indiana makes you the judges of both the law and the facts. Though this means you are to determine the law for yourself it does not mean you have the right to make, repeal, disregard or ignore the law as it exists.

Tr. p. 395.

 In light of these differences, the State asserts that *Bridges v. State,* 835 N.E.2d 482 (Ind.2005), controls the outcome of this case. There, the defendant argued that the trial court erred by failing to include among the final instructions his tendered instruction that pursuant to Article I, Section 19 of the Indiana Constitution, the jury has the right to decide both the law and the facts. The court read this instruction during preliminary instructions but inadvertently omitted it during final instructions. On appeal, our Supreme Court first looked to *Warren.* It then found:

> There is no sound basis for distinguishing between the right to seek a Section 19 instruction during a habitual offender phase and the right to seek it during final instructions of a guilt phase. A defendant is entitled to have a proper Section 19 instruction presented to the

jury in both preliminary and final instructions.

*Id.* at 483. The court specifically noted that in *Warren,* "[t]he elapsed time between the guilt and habitual offender phases of the trial ... was two days, and we held it to be reversible error for the trial court to refuse the request." *Id.* Finding the case before it "present[ed] significant differences" from *Warren,* the *Bridges* court held:

> Although the trial court incorrectly failed to read the Section 19 instruction among the other final instructions, it is very significant that this instruction was given to the jurors both orally and in writing among the preliminary instructions only a day before, and also provided to them in written form for use during deliberations. Under these circumstances, we find that the trial court's omission of the Section 19 instruction when it re-read its preliminary instructions among the final instructions does not warrant reversal.

*Id.* at 484.

We agree with the State that *Bridges* controls the outcome of this case. Although the trial court erred by failing to give the Section 19 instruction during the habitual offender phase of trial, the error does not warrant reversal. Similar to *Bridges,* we find it very significant that the court read the Section 19 instruction during final instructions of the guilt phase of trial. This occurred on the *very same day* as the habitual offender phase of trial. Also, the jury had a copy of this instruction for use during deliberations, and counsel for Shouse read this instruction to the jury during closing argument. Under these circumstances, the error is not reversible. We therefore affirm Shouse's habitual offender adjudication.

### V. Appropriateness of Sentence

█ Last, Shouse contends that his eight and one-half year sentence is inappropriate and asks us to impose the presumptive term. This Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give 'due consideration' to the trial court's sentence because of 'the special expertise of the trial bench in making sentencing decisions,' Appellate Rule 7(B) is 'an authorization to revise sentences when certain broad conditions are satisfied.'" *Purvis v. State*, 829 N.E.2d 572, 588 (Ind.Ct.App. 2005) (internal citations omitted), *trans. denied, cert. denied*, —— U.S. ——, 126 S.Ct. 1580, 164 L.Ed.2d 310 (2006).

█ The nature of Shouse's offenses does not support his argument that he should receive the presumptive sentence. Shouse, who wanted to go to Cincinnati to purchase drugs, stole a truck and then led several law enforcement agencies on a 100–mile–per–hour chase, which went through a school zone at a time when students were just getting out of class. When the officers caught up with Shouse and boxed him in with their vehicles, he rammed the truck into two of their vehicles. And when the officers were finally able to bring the truck to a stop, Shouse locked the door, popped open a beer, and refused to come out. Even after the police broke the truck window, Shouse continued to resist, forcing an officer to use a TASER.

The character of this offender also supports an enhancement of his sentence. As the trial court stated, Shouse is a "career criminal." Tr. p. 426. Shouse's criminal activity began when he was just twelve years old, and he has nine juvenile adjudications for various offenses such as robbery, aggravated burglary, theft, resisting arrest, disorderly conduct, and assault. As an adult, Shouse has been convicted of numerous offenses including: disorderly conduct, assault, and breaking and entering in 1983; no driver's license, carrying a concealed weapon, DUI, disorderly conduct, intimidation, and attempted felonious assault in 1984; assault, disorderly conduct, and possession of an open flask in 1988; assault on a law enforcement officer and resisting arrest in 1989; resisting arrest in 1990; domestic violence in 1995; public intoxication, criminal damaging or endangering, menacing, and DUI in 1996; drug abuse, menacing, and DUI in 1997; robbery in 1998; vandalism in 2000; unauthorized use of property and theft in 2001; criminal trespass, disorderly conduct, and receiving stolen property in 2002; and finally, theft by unlawful taking and aggravated assault in 2003. Despite his extensive and repeated contact with law enforcement, Shouse was not deterred from criminal activity. Nothing about his character leads us to find that his sentence in this cause is inappropriate. We therefore affirm his sentence.

Affirmed.

DARDEN, J., and RILEY, J., concur.