**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 25 2012, 8:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ADAM C. SQUILLER**
Squiller Law Office, P.C.
Auburn, Indiana

ATTORNEY FOR APPELLEE:

**GREOGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANDREW HUNTSMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 57A03-1201-CR-14 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE NOBLE SUPERIOR COURT
The Honorable Michael J. Kramer, Judge
Cause No. 57D02-1108-CM-520

**July 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Andrew Huntsman appeals from the one-year sentence imposed following his guilty plea to Class A misdemeanor Cemetery Mischief.[1] Huntsman contends that his sentence is inappropriately harsh. We affirm.

## FACTS AND PROCEDURAL HISTORY

On the night of July 31, 2011, Huntsman and another went to the Sparta Cemetery in Noble County. Once there, the duo, each of whom had brought a shovel, removed the dirt from above the burial vault of B.R., who had died the previous year. After approximately four hours of digging, the duo reached the metal vault approximately five feet down and stopped. At some point, Huntsman urinated "[i]n the corner of the dirt." Tr. p. 22. On August 8, 2011, the State charged Huntsman with Class A misdemeanor cemetery mischief. On December 12, 2011, Huntsman pled guilty as charged, admitting that he had "recklessly, knowingly or intentionally damaged a burial ground … by digging up the dirt over a vault[.]". Tr. p. 6. That day, the trial court sentenced Huntsman to one year of incarceration.

## DISCUSSION AND DECISION

### Whether Huntsman's Sentence is Inappropriate

We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an

---

[1] Ind. Code § 35-43-1-2.1(b) (2011).

authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). As previously mentioned, the trial court sentenced Huntsman to a fully-executed one-year sentence, the maximum possible for a Class A misdemeanor.

On the spectrum of behaviors that could constitute cemetery mischief, Huntsman's crime can be characterized as egregious. Huntsman did far more than simply damage a burial ground; he and a cohort, over the course of four hours, dug five feet down to a steel burial vault, and were apparently prevented from disturbing the remains themselves only by an inability to breach the vault. At the guilty plea/sentencing hearing, Huntsman agreed that he and his companion stopped when they reached the vault because there was "[n]o where [sic] else to go[.]" Tr. p. 22. It seems to us that only actually disturbing the remains would have made Huntsman's crime more egregious, and he and his companion seem to have intended to do just that. Moreover, Huntsman admitted to urinating in the excavated grave.

Furthermore, a representative of the victims (who were B.R.'s family members and friends) spoke of the profound impact Huntsman's crime had had on them. The

3

representative told Huntsman, "What you have done to our family and our friends and community is unthinkable." Tr. p. 29. The representative described the "[r]ecurring terror of wondering what [Huntsman] would have done if [he] would have been able to open the vault[,]" how the victims lived in fear that he might "try this again[,]" and how what he had done "did not end once the dirt was replaced [and] one the grass filled the space with greenness." Tr. pp. 30-31. The nature of Huntsman's offense justifies an enhanced sentence.

As for Huntsman's character, we acknowledge that there is much in the record to cast it in a favorable light. Huntsman's cemetery mischief conviction is his first criminal conviction, and he had no previous contact with the criminal or juvenile justice systems. Huntsman is currently attending Oral Roberts University, where after one semester he has earned straight As, competes in pole vault on the track and field team, is a member of the Hebrew Club and Fellowship of Christian Athletes, and has volunteered for a community service program entitled "Adopt-a Block."

That said, the record also contains much that does not speak so well of Huntsman's character. Huntsman committed a crime that any reasonable person would have known would profoundly affect the family and friends of a recently-departed loved one, which does not speak well of his character. The excavation took approximately four hours, and apparently at no point did Huntsman consider abandoning it. There is also material in the record casting doubt on Huntsman's veracity and acceptance of responsibility. At the guilty plea/sentencing hearing, Huntsman claimed that he had initially gone to Sparta Cemetery on a dare. In a later letter, however, Huntsman admitted that he had not previously been

4

forthcoming with the trial court and that he had gone to the cemetery from the start with the intent of attempting to resurrect B.R. Moreover, despite his claim that he turned himself in voluntarily, Huntsman, in fact, did not go to the police until he was contacted by a detective. Huntsman also does not seem to have taken full responsibility for his actions, expressing in another letter his beliefs that "[his] case was about more than just [him] because of the publicity of it" and that the prosecutor and trial court "c[ame] down hard … for the protection of political reputations." Appellant's App. p. 30. In light of the nature of Huntsman's offense and his character, Huntsman has failed to establish that his sentence is inappropriate.

We affirm the judgment of the trial court.

VAIDIK, J., and CRONE, J., concur.