Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2014, 9:06 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIC K. KOSELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUAN Q. BEAMON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1307-CR-599 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley E. Kroh, Commissioner
Cause No. 49G03-1110-FB-76850

**January 31, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Juan Q. Beamon (Beamon), appeals his sentence for sexual misconduct with a minor, a Class C felony, Ind. Code § 35-42-4-9(b)(1), and his adjudication as an habitual offender.

We affirm.

## ISSUES

Beamon raises two issues on appeal, which we restate as:

(1) Whether the trial court vindictively re-sentenced Beamon on remand when the individual and aggregate sentence on re-sentencing was less than the original sentence imposed and within the statutory range; and

(2) Whether Beamon's sentence is inappropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

The facts underlying Beamon's conviction, as found by this court in his initial direct appeal, are as follows:

> On October 12, 2011, Beamon and his cousin J.W., the mother of fifteen-year-old K.P., went to a bar to celebrate J.W.'s fortieth birthday. K.P. and her sister C.W. remained in J.W.'s apartment. K.P. went to sleep clothed, but took her clothes off at some point because she became hot. At some point, J.W. and Beamon returned to the apartment, and J.W. fell asleep on the couch.
>
> K.P. awoke because she was being touched and saw Beamon crouched over the top of her. K.P. said, "Dude, what the F are you doing? I'm not my mother." Beamon did not respond verbally, but left the room. K.P. put her "clothes back on and wrapped up and turned and faced the wall." K.P. did not tell anyone at that point because she was scared. K.P. fell back to sleep.

2

K.P. awoke again and discovered that her shorts and underwear were at her knees and Beamon was touching her vagina area. K.P. lay on her back and Beamon "had his hand in [her] vagina area." K.P. said, "Dude, what are you doing?" Beamon then stood up, shook his head, and walked out of K.P.'s room. K.P. did not leave her room because she was scared, but she called her mother and tried to listen to see if she heard her mother's phone, but she did not hear it. K.P. then called C.W. and stated: "Can you come and get me?" K.P. told her sister that Beamon "was touching [her] 'coota mama,'" which was a term K.P. used for vagina.

C.W. called some other family members who came over to the apartment. Rheagan Gilmore, a relative of K.P., came over and asked where Beamon was located, and her son told her that Beamon was in the back room. Gilmore went into the back room, found Beamon shirtless on the floor, struck Beamon with a "little bat" and told him to "get up and get the f— out." Beamon then exited the apartment, K.P. then told Gilmore what happened, and Gilmore called the police.

*Beamon v. State*, No. 49A02-1207-CR-571, at *1 (Ind. Ct. App., Feb. 25, 2013) (internal citations omitted).

On October 31, 2011, the State filed an Information charging Beamon with Count I, sexual misconduct with a minor, a Class B felony, I.C. § 35-42-4-9(a)(1) and Count II, sexual misconduct with a minor, a Class C felony, I.C. § 35-42-4-9(b)(1). Additionally, the State filed an habitual offender information. On June 6, 2012, Beamon was found guilty as charged. On June 29, 2012, following a sentencing hearing, the trial court vacated the judgment of conviction on Count II due to double jeopardy concerns and sentenced Beamon to sixteen years for the Class B felony, enhanced by ten years due to his status as an habitual offender, for an aggregate sentence of twenty-six years. The trial court suspended three years of his sentence.

Beamon appealed. On direct appeal, Beamon challenged the sufficiency of the evidence supporting his conviction for Class B felony child molesting. We found the

3

evidence insufficient to support his conviction and ordered the trial court to reverse Beamon's Class B felony conviction and enter judgment on the previously vacated conviction of sexual misconduct of a minor as a Class C felony. *See* Slip Op. at *6.

On remand and during the re-sentencing hearing on June 12, 2013, the trial court found Beamon's criminal history as a significant aggravator and sentenced him to seven years for sexual misconduct with a minor, as a Class C felony, enhanced by eight years for the habitual offender adjudication, for an aggregate sentence of fifteen years.

Beamon now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Vindictive Sentencing*

Beamon first contends that the trial court vindictively sentenced him when it proportionally doubled his habitual offender enhancement during the re-sentencing hearing without finding any additional aggravators. Pursuant to Ind. Code § 25-50-2-8(h), the sentence for an habitual adjudication "is not less than the advisory sentence for the underlying offense and not more than three (3) times the advisory sentence for the underlying offense[.]" As the advisory sentence for a Class B felony is ten years, Beamon received the advisory term as his habitual offender sentence at the original hearing. However, on re-sentencing, he received twice the advisory sentence for a Class C felony—the advisory sentence being four years—as his habitual offender sentence enhancement. Beamon maintains that this amounted to vindictive re-sentencing that is prohibited by the Fifth and Fourteenth Amendments to the United States Constitution.

4

"While sentencing discretion permits consideration of a wide range of information relevant to the assessment of punishment, . . . it must not be exercised with the purpose of punishing a successful appeal." *Alabama v. Smith*, 490 U.S. 794, 798, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). "Due process of law, then, requires that vindictiveness against a defendant for having successfully attached his first conviction must play no part in the sentence he receives after a new trial." *Id.* Whenever a trial court imposes a more severe sentence upon a defendant, the reasons for doing so must be clear, or the presumption arises that there has been a vindictive purpose. *See id.* "Once this presumption blossoms, the prosecution must proffer evidence to overcome it; elsewise, vindictiveness is deemed established, and the due process clause requires invalidation of the challenged action." *Sanjari v. State,* 981 N.E.2d 578, 581 (Ind. Ct. App. 2013), *trans. denied* (citing *U.S. v. Pimienta-Redondo*, 874 F.2d 9, 13 (1st Cir. 1989)).

In analyzing the issue of presumed vindictive re-sentencing in *Sanjari*, we acknowledged

> that a trial court is likely to view individual sentences in a multi-count proceeding as part of an overall plan, a plan that can be overthrown if one of more of the convictions is reversed or reduced in degree. We join with those courts who allow the trial court flexibility upon remand, including the ability to increase sentences for individual convictions without giving rise to a presumption of vindictive sentencing, so long as the aggregate sentence is no longer than originally imposed.

*Id.* at 583. In other words, in alleged vindictive re-sentencing cases, the aggregate sentence of the conviction is the key. *See id.* at 582.

Here, Beamon's original aggregate sentence was twenty-six years, whereas his aggregate re-sentence amounted to fifteen years. During each sentence, the trial court

5

suspended three years. Moreover, even though Beamon brought the proportionality of the habitual offender sentence to the trial court's attention at re-sentencing, the trial court specifically considered the argument and found that the eight-year habitual offender sentence was appropriate from "the facts and argument and circumstances presented" at the hearing. (Re-Sent. Transcript p. 15). Therefore, we conclude that the trial court was not vindictive in resentencing Beamon.

## II. *Appropriateness*

Next, Beamon challenges the appropriateness of his sentence in light of the nature of the offense and his character. We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied. *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied*. Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damages done to others, and myriad of other factors that some to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

With respect to the nature of the crime, we note that Beamon entered the bedroom of a sleeping minor relative and forced himself on her, not once but twice. These events occurred while other relatives, including other minor children, were in the home. Turning to Beamon's character, we note his extensive criminal history, beginning at age thirteen. He amassed fourteen juvenile arrests, four felony convictions, and ten misdemeanor convictions. Beamon admitted to using Vicodin and has had urine screens test positive for marijuana. Prior attempts at rehabilitation have failed and Beamon has had his probation and community correction sentences revoked. In light of the facts before us, we cannot conclude that Beamon's sentence is inappropriate in light of the nature of the crime and his character.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not vindictively re-sentence Beamon and Beamon's sentence is not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

VAIDIK, C.J. and MAY, J. concur

7