# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 26 2018, 7:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

---

## IN THE
# COURT OF APPEALS OF INDIANA

---

Chad Giroux,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

February 26, 2018

Court of Appeals Case No.
79A04-1709-CR-2206

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1606-F1-9

**Bradford, Judge.**

# Case Summary

[1] B.G., the daughter of Appellant-Defendant Chad Giroux and Mackenzie Schultz, was neglected and improperly fed over the first few months of her life, finally dying of asphyxiation in November of 2015, when she was not even eight months old. Giroux went to some lengths to conceal his culpability, including lying to the Tippecanoe grand jury and refusing to turn over evidence to it. Giroux pled guilty to Level 1 felony neglect of a dependent resulting in death, Class A misdemeanor failure to report a dead body, Level 6 felony perjury, and Level 6 felony obstruction of justice, and the trial court sentenced him to an aggregate sentence of thirty-five years of incarceration, with one year suspended to probation. Giroux contends that the trial court abused its discretion in sentencing him and that his sentence is inappropriately harsh. Because we disagree, we affirm the judgment of the trial court.

# Facts and Procedural History

[2] B.G. was born on March 17, 2015, the second daughter of Giroux and Schultz. Giroux and Shultz had responsibility for the care of B.G. From March to November of 2015, B.G. was neglected, not properly fed, and emaciated, weighing eleven pounds at almost eight months old. Giroux and Schultz had B.G. sleeping in a closet, and Giroux was aware that Schultz placed blankets over B.G., doing nothing to stop her. Giroux acknowledged that the combination of neglect and placing blankets on B.G. caused her death of asphyxiation on or about November 15, 2015. Although Giroux and Schultz

became aware that B.G. had died, they did not report her death to authorities within three hours of discovery. Giroux and Shultz waited at least a day before informing authorities of B.G.'s death. After learning of B.G.'s death but before reporting it, Giroux removed and hid several hard drives from computers in his residence, indicating later (when the drives were requested by the grand jury) that they did not exist.

[3]     On May 31, 2016, Giroux testified before the grand jury and intentionally offered false testimony regarding when he and Schultz became aware of B.G.'s death. On June 16, 2016, the grand jury indicted Giroux with Level 1 felony neglect of a dependent resulting in death, Level 3 felony neglect of a dependent resulting in serious bodily injury, Level 5 felony neglect of a dependent resulting in bodily injury, Level 6 felony neglect of a dependent, Class A misdemeanor false informing, Class A misdemeanor failure to report a dead body, Level 6 felony perjury, and Level 6 felony obstruction of justice. On January 6, 2017, Giroux pled guilty to Level 1 felony neglect of a dependent resulting in death, Class A misdemeanor failure to report a dead body, Level 6 felony perjury, and Level 6 felony obstruction of justice.

[4]     On March 9, 2017, the trial court sentenced Giroux to a term of thirty-two years of incarceration for Level 1 felony neglect of a dependent, one year for failure to report a dead body, and two years each for perjury and obstruction of justice. The trial court ordered that the sentences for perjury and obstruction of justice be served concurrently but that the sentences otherwise be served

consecutively for a thirty-five-year aggregate sentence, with one year suspended to probation.

# Discussion and Decision

## I. Whether the Trial Court Abused its Discretion in Sentencing Giroux

[5] Under our current sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2008). We review the sentence for an abuse of discretion. *Id.* An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id.* A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence–including a finding of aggravating and mitigating factors if any–but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id.* at 490–91. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. However, the relative weight or value assignable to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion. *Id.*

[6]     The trial court issued a sentencing order, which provides, in part, as follows:

> The Court finds as mitigating factors the defendant pleaded guilty and accepted responsibility, the defendant has family support and an employment history.
>
> The Court finds as aggravating factors the defendant does have a criminal history, the victim was under the age of twelve (12) and the defendant has a history of substance abuse.
>
> The Court further finds that the aggravating factors outweigh the mitigating factors.

Appellant's App. Vol. II p. 16.

[7]     Giroux challenges the trial court's finding that the victim's age being under twelve was an aggravating circumstance, arguing that it is improper because the victim being under the age fourteen is an element of neglect of a dependent causing death. *See* Ind. Code § 35-46-1-4(a)(1), -4(a)(2), -4(a)(3), -4(b)(3) (providing that neglect of a dependent is a "Level 1 felony if it is committed … by a person at least eighteen (18) years of age and results in the death of a dependent who is less than fourteen (14) years of age"). Quite simply, B.G. was far younger than twelve (or fourteen) when she died, not even having reached her first birthday. As the trial court observed at sentencing, "the victim is eight months old. Defenseless." Tr. Vol. II p. 56. Under the circumstances of this case, we cannot say that trial court abused its discretion in finding B.G.'s tender age to be aggravating. *See, e.g.*, *McElroy v. State*, 865 N.E.2d 584, 589–90 (Ind. 2007) (observing that while "[i]t is true that a material element of a crime may not be used as an aggravating factor to support an enhanced sentence[,]

when evaluating the nature of the offense, 'the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors'" and that "this aggravator is 'thought to be associated with particularly heinous facts or situations'").

[8] Giroux also seems to suggest that the trial court did not give his guilty plea enough weight. We treat the consideration of remorse or acceptance of responsibility as a credibility determination best left to the sentencing court. *See Pickens v. State*, 767 N.E.2d 530, 534–35 (Ind. 2002). Here, the trial court acknowledged Giroux's guilty plea but also noted Giroux's "lack of affect" during the sentencing hearing and that Giroux did not exhibit the "pain and anguish I would think a father would show at the loss of a child." Tr. Vol. II p. 55. The record indicates that the trial court considered Giroux's plea, the acceptance of responsibility, and alleged remorse before finding his guilty plea and acceptance of responsibility to be mitigating. As mentioned, however, we will not review the amount of weight given to this mitigating circumstance. Giroux has failed to establish that the trial court abused its discretion in sentencing him.

## II. Appropriateness of Sentence

[9] We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due

consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

[10] The nature of Giroux's crimes is egregious. As a result of Giroux's neglect, his daughter B.G. did not even reach her first birthday, dying of asphyxia while already malnourished, emaciated, and dramatically underweight. Photographic exhibit evidence showed the lack of fatty tissue and the "wizened" look of B.G., and she grew only five pounds in seven months, indicating that the neglect was long-standing. Tr. Vol. II p. 52. Giroux and Schultz caused B.G. to sleep in a closet and covered her with blankets, which was the final act of neglect and the cause of her death.

[11] Beyond lying to and concealing evidence from the grand jury, Giroux went to some additional lengths to conceal his crimes. To this end, Giroux and Schultz devised and attempted a rather disturbing plan to convince others that they did

not know that B.G. was actually dead until a full day after they actually discovered her. After B.G. died, Giroux and Schultz agreed to drive around with her dead body strapped into a car seat, the window open to imply that she was still alive. The trial court noted that this was done after rigor mortis had begun taking hold. The trial court also noted that the crimes included the removal and hiding of computer hard drives, there were in fact bottles of formula in the house, the house had been cleaned, and evidence showed that some bags of items had been disposed of. The crimes had other victims, including Giroux's older daughter—a "collateral" victim—along with other family members. Tr. Vol. II p. 53. The appalling nature of Giroux's offenses warrants the imposition of enhanced sentences.

[12] Much of what we wrote concerning the nature of Giroux's offenses is relevant to making out his character, and, to say the least, it does not speak well of him. At any time during B.G.'s short life, Giroux could have ceased the neglect, chose not to, and then went to great lengths to conceal his crimes. The record indicates a person who seems to be more worried about his punishment than upset about the death of his daughter. Giroux told a psychological evaluator that he and Schultz did not immediately take B.G. to the hospital because they ware "'terrified they would get in trouble.'" Appellant's App. Vol. II p. 52. The trial court noted Giroux's strange "affect" at sentencing and that he did not act like a father who had lost a daughter. Finally, Giroux's criminal history, while not particularly serious, certainly is not a positive: two convictions for Class A misdemeanor driving while suspended and one for Class A

misdemeanor possession of paraphernalia. Giroux's criminal record, while not the worst we have encountered, weighs against his character. In light of the egregious nature of Giroux's offenses and his character, he has failed to convince us that his thirty-five-year sentence is inappropriately harsh.

[13] We affirm the judgment of the trial court.

Robb, J., and Crone, J., concur.