## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 29 2017, 9:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone, IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney of Indiana
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Alan Shock,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 29, 2017

Court of Appeals Case No.
48A02-1702-CR-439

Appeal from the Madison Circuit Court

The Honorable Angela Warner Sims, Judge

Trial Court Cause No.
48C01-1512-F5-2118

**Barnes, Judge.**

# Case Summary

Mark Alan Shock appeals his convictions for Level 5 battery and Class A misdemeanor resisting law enforcement. We affirm.

# Issue

The sole issue before us is whether the trial court erred in denying Shock's motion for a mistrial due to the State's alleged discovery violation.

# Facts

On December 2, 2015, Officer Garrett Creason of the Madison County Sheriff's Department was dispatched to Shock's Chesterfield address. Officer Creason confirmed that Shock had outstanding warrants for his arrest. Subsequently, Officers Gregory Adams and Jason Thomas arrived at the scene and told Shock that he was going to jail. When the officers attempted to arrest him, Shock refused their order to stand and place his hands behind him. Instead, he leaned back in his chair. The officers placed Shock into handcuffs, forcibly removed him from the residence, and placed him into Officer Creason's car.

As Officer Creason pulled away from the residence, Shock became belligerent, repeatedly slamming his head into a laptop, activating the emergency lights, and ramming his head and body against the front passenger door and window so forcefully that the other officers could see the impact from their cars. When Officer Creason stopped the car and opened the passenger door, Shock placed his feet outside the car and prepared to spit on him. Officer Creason warned that he would tase him. Shock replied, "F*** it! Tase me." Tr. Vol. I p. 76.

Officer Adams, who had stopped to assist, pushed Shock's legs back into the squad car, and Shock kicked Officer Adams. Officer Adams tased him. Shock kicked Officer Adams a second time, and Officer Adams tased him again.

[5] The State initially charged Shock with various offenses, most of which were subsequently dismissed; he was ultimately tried for Level 5 felony battery resulting in bodily injury and Class A misdemeanor resisting law enforcement.[1]

[6] On December 11, 2015, the trial court entered a standing discovery order, requiring the State to disclose "[a]ny report . . . made in connection" with the case and any "documents, photographs or tangible objects which the prosecuting attorney intends to use in the hearing or trial, or which were obtained from or belong to the defendant." App. Vol. II p. 28. The standing discovery order also stated:

> (b) No written motion is required, except to compel discovery, for a protective order, or for an extension of time. . . .

> (c) Failure of either side to comply with this [standing discovery] Order may result in exclusion of evidence at trial or other appropriate sanctions. However, discovery

---

[1] On January 4, 2017, the State moved to dismiss Counts I (Level 5 felony intimidation), II (Class B misdemeanor battery by bodily waste), IV (Level 6 felony criminal confinement, VI (Class A misdemeanor invasion of privacy), and VII (Level 6 felony invasion of privacy), and the motion was granted on January 5, 2017.

> violations or disputes not raised at pre-trial will be considered waived.

*Id.* On September 9, 2016, Shock notified the trial court that he had requested but had not received certain information. *See id.* at 65 ("I was told "there is none."). At a trial readiness hearing on October 18, 2016, on Shock's oral motion, the trial court ordered the following:

> . . . [T]he State is going to check with law enforcement regarding whether or not, uh, there's any type of, uh, memory component to the, the tasers. And whether or not any photographs were taken of Mr. Shock on that evening. And I expect, uh, if either of those exist, that those be turned over to the Defense.

Supp. Tr. p. 29. At a subsequent hearing on December 20, 2016, Shock indicated that no further issues required the trial court's attention.

[7] Shock was tried by a jury on January 5-6, 2017. Before voir dire, defense counsel notified the trial court that the State had failed to produce taser data relevant to the defense's theory that Shock had kicked Officer Adams involuntarily due to misuse or overuse of the taser. Counsel for the State did not know if the tasers stored such data. During a recess, Officer Thomas informed the State that tasers did, in fact, record such data. The State notified defense counsel, who called Officer Thomas as a preliminary witness. Officer Thomas, a former taser instructor, testified that tasers record the "length of trigger pull time, . . . time and date [of use]"; and that typically after a taser is used on a suspect, the police department's taser instructor downloads the data. Tr. Vol. I. p. 116.

[8] Shock moved for a mistrial, stating "[W]e made a specific discovery request . . . for any type of recording device that is on those tasers, and we are finding out while the trial's going on, that such a recording device exits [sic], but we haven't been given it." *Id.* at 120. The State countered that Shock had initially sought the taser data via an oral motion, but failed to follow up with a written request; that the discovery violation was unintentional; and that a mistrial was inappropriate where the State could still produce the taser data in advance of trial. The trial court ordered the State to produce the taser data the next day.

[9] On the second day of trial, after the State produced the taser data, defense counsel renewed his motion for mistrial stating,

> Our defense is . . . centered around how aggressively Mr. Shock was tasered that night, and how many times he was tasered, and where he was tased on his body. And this evidence is literally the key component of our argument. And we are given it on the night of the first day of trial after the Jury's been impaneled and three (3) witnesses have been, um, examined on the stand, Judge.

*Id.* at 180. Defense counsel argued that he lacked sufficient time to review and analyze the data. The State again argued that less stringent remedies were available, including a motion to exclude the taser data and the State's agreement not to introduce the taser data into evidence. In denying the motion for a mistrial, the trial court reasoned:

> THE COURT: Um, certainly this isn't the most ideal situation that we find ourselves in midstream, um, in a trial after a jury's already been impaneled and we are well underway into, um, the evidentiary portion of the trial. Uh, the Court starts by, um, it's

— going through its analysis by, uh, a mistrial is an extreme remedy, um, and... it's generally not favored unless, unless, uh, circumstances clearly, um, warrant that. . . .

\* \* \* \* \*

I mean, certainly I think there's some ownership, uh, to be spread around. Uh, the Court, um, is not of the opinion that is entirely the State's obligation to, uh, provide anything and everything, uh, that Defense wants in order to either develop a defense, or to develop a strategy of defense, or to potentially investigate or explore other issues that, um, maybe, um, pertinent to a particular defense that would wanna be presented. Uh, certainly the State is incumbent upon a certain amount of duty to provide, um, evidence to the Defense, and there is a standing order of discovery that is issued by this Court as well. . . . .

Uh, what I hear the State saying, . . . [is] that this particular information that the Defense was seeking, um, from the State's perspective, was not ever a part of its case, and never was intended to be introduced as a part of their case, which would at least trigger that initial threshold of anything that's within their file and anything that they intend to use or proffer to the Court or a jury during trial certainly would be subject to, um, I guess what a court would deem of have an automatic disclosure.

Now, to shift that a little bit, certainly as Mr. Newman indicates, um, but this wasn't something that the State was completely blinded to . . . . Um, Mr. Newman did bring up that issue [at the December 20, 2016, hearing]. Um, the State did, did acknowledge, um, that they would look into that further. Uh, certainly, the Court can understand, . . . . that, you know, things can get overlooked and, and things, um, can, can, can get lost in the shuffle with a lot of case. Um, certainly the best practice this Court can always indicates to counsel on both sides, uh, when oral requests are made, that it's always best practice to follow up with written motions. I think, certainly, that is, uh, a better practice . . . .

* * * *

And so, when the Court looks to the trial rules as the guidance as to how discovery is to be conducted, um, several things were not followed here. Um, one (1), there wasn't the written motion, although that's not, uh, the really the most defective part of this. . . . But at no point does the Defense alert the Court to the fact that the State has not complied or . . . honored the specific request that was made. And more pointed to that is when we appear [at the December 20, 2016, hearing], . . . the Court specifically asked . . . , "Is there anything else the Court needs to be aware of?" At no point does the Defense, during that hearing, indicate to the Court, . . . I specifically asked the State for this information, they have not even responded to me. They've not indicated whether it exists or whether it doesn't exist." Um . . . certainly there were other remedies available to the Defense at that point, a motion to compel, um, another hearing on that issue, and none of that was alerted to the Court to assist.

. . . I don't think it's, uh, fair to the opposing party for a party just in open court to say, "I want this," and then sit on their hands and do nothing about until we are mid-course through the middle of the trial. Again, given this isn't evidence that would have been required to be turned over by the State absent a request, the Court has to believe that the Defense also has some duty to investigate its own case . . . . My understanding, at least, um, based on the record that's been made, there was no affirmative steps taken by Defense to inquire of the Sheriff's Department whether they, they retain this information or potentially to make contact with other officers over there as to whether or not, uh, there was such information.

* * * * *

. . . [T]he Court is denying the motion for mistrial, . . . , I believe that Defense Counsel, um, has, has waived that issue to the extent that it was never brought before the Court again, um, after the request was made and that there was an issue.

> And certainly, the Court would have been, um, more than willing to attempt to intervene, issue other orders, um, respond to a motion to compel, and, and hold the State further accountable. . . .

*Id.* at 189-194. Shock moved to exclude the taser data report, and the trial court granted the motion. The jury found Shock guilty as charged; he now appeals.

## Analysis

[10] Shock argues that the trial court erred in denying his motion for a mistrial due to the State's discovery violations because "[n]o remedy by a mistrial could rectify the harm to [him caused] by the late production of the discovery." Appellant's Br. at p. 19. The trial court has broad discretion in dealing with discovery violations and may be reversed only for an abuse of that discretion involving clear error and resulting prejudice. *Berry v. State,* 715 N.E.2d 864, 866 (Ind. 1999). We have previously held that granting a mistrial for discovery violations is an extreme remedy that should not be routinely granted. *Hatcher v. State,* 762 N.E.2d 170, 174 (Ind. Ct. App. 2002).

[11] The denial of a motion for a mistrial lies within the sound discretion of the trial court. *Gill v. State,* 730 N.E.2d 709, 712 (Ind. 2000). In deciding whether a mistrial is appropriate, the trial court is in the best position to gauge the surrounding circumstances and the potential impact on the jury. *Mack v. State,* 736 N.E.2d 801, 803 (Ind. Ct. App. 2000). The overriding concern is whether the defendant "was so prejudiced that he was placed in a position of grave peril" to which he or she should not have been subjected. *Coleman v. State,* 750

N.E.2d 370, 374 (Ind. 2001). The "gravity of peril" is measured by the "probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct." *Id.*

[12] It is well settled that the proper remedy for a discovery violation is usually a continuance. *Warren v. State,* 725 N.E.2d 828, 832 (Ind. 2000). Had Shock informed the trial court, at the December 20, 2016 hearing, that the State—in violation of two court orders—had still not disclosed taser data relevant to Shock's anticipated defense, he could have obtained a continuance of the approaching jury trial. As the trial court explained in denying the mistrial, it could also have granted a motion to compel or ordered further hearing on the matter. As the standing discovery order states, "[D]iscovery violations or disputes not raised at pre-trial will be considered waived." App. Vol. II p. 29. By Shock's inaction and failure to timely enlist the trial court's intervention on his behalf, he waived the issue of the discovery violation. *See Warren,* 725 N.E.2d at 832 (holding that failure to object and request a continuance or exclusion of the evidence is grounds for waiver of a discovery violation).

[13] Nor do we find that the State's conduct in belatedly producing the taser data was so prejudicial that Shock was placed in a position of grave peril to which he should not have been subjected, where: (1) Shock presented no evidence that the State deliberately withheld the taser data; (2) the taser data was disclosed before the close of trial; (3) Shock could have confirmed the existence of the taser data independently in advance of trial; (4) he failed to avail himself of the various remedies available before the trial; and (5) he presented no evidence

that the taser data constituted freestanding evidence of his innocence. Shock makes no argument that the State's failure to provide the taser data violated *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194 (1963). At best, the taser data would have raised an issue of witness credibility for jurors, who would have been tasked with resolving conflicts between Shock's testimony and that of the officers.[2] For the foregoing reasons, the trial court did not commit an abuse of discretion involving clear error and resulting prejudice in denying Shock's motion for a mistrial.

# Conclusion

We find no abuse of discretion in the denial of Shock's motion for a mistrial. We affirm.

Affirmed.

May, J., and Bradford, J., concur.

---

[2] As to the charge of resisting law enforcement, the record contains independent evidence that Shock resisted law enforcement well before he was tased.