## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 15 2018, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Denise L. Turner
DTurner Legal LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Xavier Heckstall, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 15, 2018 <br><br> Court of Appeals Case No. 49A04-1709-CR-2158 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Stanley E. Kroh, Magistrate <br><br> Trial Court Cause No. 49G03-1607-F1-29330 |

**Baker, Judge.**

[1] Xavier Heckstall was convicted of Level 3 Felony Kidnapping,[1] Level 6 Felony Intimidation,[2] Level 6 Felony Criminal Recklessness,[3] Level 6 Felony Pointing a Firearm,[4] Level 6 Felony Strangulation,[5] and two counts of Level 1 Felony Rape.[6] He appeals, arguing that the trial court erred by denying his motion for a continuance. Finding no error, we affirm.

## Facts

[2] Heckstall, T.C., and T.C.'s three children lived together in a three-bedroom apartment in Indianapolis. On July 26, 2016, Heckstall and T.C. began arguing. At some point, Heckstall took T.C. to an apartment next door, which belonged to Heckstall's cousin. The couple continued arguing. Heckstall slapped T.C. and grabbed her by the throat, slammed her against the wall, and squeezed her throat until she could not breathe. He then went to the kitchen to retrieve a knife. When he returned to T.C., he held the knife against her body and acted like he was going to stab her in the stomach. Heckstall proceeded to put his hand up T.C.'s dress and touch her vagina over her underwear, put his

---

[1] Ind. Code § 35-42-3-2(a).

[2] Ind. Code § 35-45-2-1(a)(1).

[3] I.C. § 35-42-2-2(a).

[4] Ind. Code § 35-47-4-3(b).

[5] I.C. § 35-42-2-9.

[6] I.C. § 35-42-4-1(a)(1).

fingers inside her vagina, and force her to perform and receive oral sex and sexual intercourse.

[3] Afterwards, Heckstall and T.C. returned to their apartment. T.C. wanted to leave and started to pack, but Heckstall became angry, went to the closet, and got a gun. He held the gun to her head and her back while he made her go back to his cousin's apartment. Eventually, Heckstall calmed down and the two returned to their apartment. One of T.C.'s children called the police.

[4] Crime scene specialist Andrea Pierce investigated the crime scene. She went to Heckstall's cousin's apartment, where she found a knife in the kitchen and a firearm in the furnace closet. The firearm had a round in the chamber and bullets in the magazine.

[5] On July 29, 2016, the State charged Heckstall with seven felonies. Heckstall's jury trial took place on July 13-14, 2017. At the beginning of the trial, Heckstall asked for a continuance to review a crime lab packet that he had received from the State at approximately 4:50 p.m. on July 12, the day before trial. The prosecutor explained that although she had requested the lab packet about a week before the trial, a crime lab employee had overlooked her request, so the prosecutor did not receive it until around noon on July 12. The prosecutor was preparing witnesses at that time, and said that as soon as that preparation was complete, she "went straight on over to [defense counsel]'s office so that [defense counsel] could redepose" T.C. Tr. Vol. II p. 5. Another deposition of T.C. took place for about one and one-half hours.

[6] The prosecutor then stated that she had gone through the new lab packet and that it contained no new information, but instead, it was an extension of a crime lab report that Pierce had prepared and that had been provided to the defense earlier in the case. The prosecutor stated that the new lab packet contained crime scene diagrams and measurements, but that the State would not be introducing those documents into evidence at trial. The prosecutor acknowledged that the discovery was late, but noted that she received it late, too.

[7] The trial court noted that the new lab packet included a laboratory examination report, laboratory notes, and a chain of custody report. It also included a compact disc that contained the full crime lab report that had already been discovered. Defense counsel asked for twenty-four hours to evaluate the new packet so that she would not be ineffective on behalf of Heckstall. The trial court ordered a recess, during which Heckstall had the opportunity to examine the packet, including the compact disc.

[8] Following the recess, Heckstall stated that reviewing the lab packet was useful and that it included information that was in his favor and "particularly interesting, particularly about where things were found." *Id.* at 13. The trial court noted that Pierce's initial lab report and another lab report had been discovered in August 2016. The prosecutor stated that Pierce's initial lab report detailed the location of where the knife and gun were recovered. The trial court then denied Heckstall's motion for a continuance and asked the State to make

Pierce available for the defense to talk to before Pierce testified. The prosecutor replied that Pierce would be present that afternoon.

[9] The case proceeded to trial, and the jury found Heckstall guilty as charged. On August 25, 2017, the trial court imposed an aggregate sentence of fifty years. Heckstall now appeals.

## Discussion and Decision

[10] Heckstall argues solely that the trial court erred by denying his motion for a continuance. Trial courts have broad discretion in dealing with discovery violations by the State in the alleged late disclosure of evidence to the defense. *Alcantar v. State*, 70 N.E.3d 353, 356 (Ind. Ct. App. 2016). We may reverse the trial court's decision regarding an alleged violation only if the trial court's decision involved clear error and resulted in prejudice. *Id.* When a party has failed to comply with discovery procedures, "the trial court is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated." *Wells v. State*, 848 N.E.2d 1133, 1143 (Ind. Ct. App. 2006), *opinion corrected on reh'g*, 853 N.E.2d 143 (Ind. Ct. App. 2006). A continuance is usually the proper remedy for a discovery violation. *Id.* Although the withholding of material evidence by the prosecution may present grounds for reversal, an appellant must affirmatively show that there was error prejudicial to his substantial rights before reversal is warranted. *Id.* at 92.

[11] Here, the prosecutor received the lab packet at approximately noon on the day before the trial. She was preparing witnesses at that time, and as soon as that preparation was complete, she took the lab packet to Heckstall. In other words, she took the lab packet to Heckstall at her earliest convenience. No error occurs when the State provides a defendant evidence as soon as the State is in possession of requested evidence. *Warren v. State*, 725 N.E.2d 828, 832-33 (Ind. 2000). The lab packet contained no material new information, but rather was an extension of Pierce's crime lab report, which had already been discovered. Although Heckstall argues that Pierce's notes in the new packet "regarding the location of certain items of evidence could have played a significant role in questioning the credibility of T.C.," appellant's br. p. 8, Pierce's crime lab report that had already been provided included the locations where the knife and gun were recovered. Heckstall does not specify what or how information in the late-discovered packet could have helped his defense.

[12] Further, after Heckstall received the lab packet, he spent one and one-half hours re-deposing T.C. Before the presentation of evidence at trial, the trial court ordered a recess during which Heckstall had the opportunity to examine the lab packet. The trial court asked the State to make Pierce available for the defense to talk to before she testified, and the State said that Pierce would be present that afternoon. The only new information in the packet was diagrams and measurements, and the State said that it did not plan to use that information during trial. Heckstall had all the relevant information before trial, including Pierce's crime lab report, and had been able to depose Pierce before trial. In

short, the State did not withhold any material evidence from Heckstall, and Heckstall has not shown that he was prejudiced by the late discovery of the lab packet. The trial court did not err by denying Heckstall's motion for a continuance.

[13] The judgment of the trial court is affirmed.

Vaidik, C.J., and Altice, J., concur.