## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 24 2020, 7:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Marcus Mayberry, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | November 24, 2020 <br><br> Court of Appeals Case No. 20A-CR-158 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Jeffrey L. Sanford, Judge <br><br> Trial Court Cause No. 71D03-1810-MR-6 |

**Pyle, Judge.**

# Statement of the Case

Timothy Marcus Mayberry ("Mayberry") appeals, following a jury trial, his conviction of murder[1] and an enhancement for the use of a firearm in the commission of a felony.[2] Mayberry argues that the trial court abused its discretion in admitting evidence. Concluding that the trial court did not abuse its discretion, we affirm the trial court's judgment.

We affirm.

# Issue

Whether the trial court abused its discretion in admitting evidence.

# Facts

The facts most favorable to the verdict reveal that on September 20, 2018, Avery Brown ("Brown") and several friends were at the Bleachers Bar in Mishawaka celebrating a birthday. Mayberry and a friend were also at the bar socializing, eating, and playing pool.

Shortly after midnight, Brown entered the men's bathroom, which was a small one-toilet, one-sink bathroom. Soon thereafter, Mayberry entered the

---

[1] IND. CODE § 35-42-1-1.

[2] I.C. § 35-50-2-11.

bathroom. Brown and Mayberry had never met and had not interacted with each other until this point. After several seconds, customers at the bar heard three gunshots. The bathroom door opened, and Mayberry exited and moved quickly towards the bar's exit. Brown, who was crawling on the bathroom floor, collapsed and said, "[h]e shot me. Help me. He shot me." (Tr. Vol. 2 at 113). As Mayberry attempted to leave the bar, he was tackled by other bar customers. However, Mayberry broke free and left the bar.

[5] Several customers rushed to assist Brown, including an off-duty paramedic who observed three gunshot wounds. The off-duty paramedic also observed that Brown had money "halfway out of his pocket." (Tr. Vol. 2 at 145). Several of those who assisted Brown later testified at trial that Brown did not have a weapon of any kind and that no one had removed anything from the scene. Brown later died from his gunshot wounds.

[6] The South Bend Police Department's Crime Lab responded to the bar and found several items of physical evidence, including Mayberry's sandal, two cartridge casings, and one bullet projectile. Law enforcement also observed bullet damage on the tile on the bathroom floor. The firearm involved in the shooting was never recovered.

[7] Forensic pathologist Dr. Darin Wolfe ("Dr. Wolfe") performed Brown's autopsy on September 22, 2018. Dr. Wolfe found that Brown had been shot three times. Specifically, one bullet entered the front of Brown's chest, perforated his right lung, and stopped before exiting his back. A second bullet

entered the right side of Brown's lower abdomen, passed through the small intestine, and stopped in his pelvis. A third bullet entered Brown's back, penetrated his right lung, and exited the right side of his chest. Dr. Wolfe concluded that the cause of Brown's death was multiple gunshot wounds.

[8] On October 3, 2018, the State charged Mayberry with murder and an enhancement for the use of a firearm in the commission of a felony. A warrant was issued for Mayberry's arrest, but he was not taken into custody until January 2019, when he was arrested by U.S. Marshals in South Carolina.

[9] At Brown's final pre-trial hearing in November 2019, his jury trial was confirmed for December 9, 2019, and the parties were ordered to submit proposed voir dire questions to the trial court one week before the trial date. After reviewing Mayberry's questions, the State believed that Mayberry was going to pursue a claim of self-defense.

[10] Mayberry's four-day jury trial began on December 9, 2019. The State presented the evidence set forth above through the testimony of two Bleachers Bar employees, nine of the bar's customers, several law enforcement officers and homicide investigators, Dr. Wolfe, and South Bend Police officer and firearm and toolmark examiner Ray Wolfenbarger ("Officer Wolfenbarger").

[11] On the second day of trial, the State filed a supplemental notice of discovery, and the trial continued with testimony from Dr. Wolfe about his observations of Brown's wounds during the autopsy. Dr. Wolfe testified that he did not observe any "soot or stippling" around any of Brown's wounds. (Tr. Vol. 3 at

79). He explained that this was significant because if there had been soot, then that would mean that the gun was "quite close." (Tr. Vol. 3 at 80). Dr. Wolfe further explained that if there had been stippling, then that would mean that the gun was "reasonably close." (Tr. Vol. 3 at 80). Because "there [was] no soot and there [was] no stippling," he could not determine how far the bullets had traveled. (Tr. Vol. 3 at 80). According to Dr. Wolfe, one explanation for the lack of soot and stippling was because the bullets had passed through thick clothing that had acted like a filter.

[12] Later that day, the State presented testimony from Officer Wolfenbarger, who testified that he had examined the fired casings and bullets recovered from the investigation and autopsy. Officer Wolfenbarger first explained that he believed that the bullets had been fired from the same handgun and that the model used was a semiautomatic Springfield XD .45 caliber handgun. The State then asked Officer Wolfenbarger if he had examined the jacket that Brown had been wearing when he was shot for gunshot residue, and Officer Wolfenbarger stated that he had. Mayberry's counsel objected and argued that there was a lack of foundation. He further explained that he had just learned of Officer Wolfenbarger's testimony the previous night. The trial court agreed that the State had failed to lay an adequate foundation and sustained the objection.

[13] The State then asked Officer Wolfenbarger about his gunshot residue and proximity examination training and testing methods, which included one test for the presence of nitrates and another for lead residue. Officer Wolfenbarger stated that he had observed three holes in Brown's jacket: an entrance puncture

on the back; an entrance puncture near the lower right jacket pocket; and an exit puncture on the right side above the pocket. Officer Wolfenbarger further testified that the test results had revealed lead residue patterns but had not revealed nitrates residue patterns. Officer Wolfenbarger explained that he had then used a Springfield XD .45 handgun and ammunition consistent with the evidence he had previously examined and had performed tests on cotton twill by "placing the muzzle from contact all the way back to 36 to 38 inches to determine the same pattern as what [was] on" Brown's jacket. (Tr. Vol. 3 at 117).

[14] Before Officer Wolfenbarger could testify about the results of his residue and proximity tests, Mayberry's counsel objected and explained that the request for testing had been submitted by the State on December 6, three days before the start of trial. He further explained that the results had not been provided to him until that morning, December 10. The trial court then asked defense counsel how Officer Wolfenbarger's testimony prejudiced his defense, which it understood to be self-defense. Mayberry's counsel explained that, given the timing of when he had received the officer's test results, he would not be able to meaningfully cross-examine Officer Wolfenbarger. The trial court again asked how the officer's testimony prejudiced his defense and asked if he would like to postpone cross-examination until the following day. Mayberry's counsel refused, arguing that "he should have [had] an opportunity to have this in advance of trial, not be sprung on me in the middle of the trial in terms of fairness." (Tr. Vol. 3 at 119). The State interjected and stated that the testing

had been performed in response to Mayberry's voir dire questions that had indicated that he was going to pursue a claim of self-defense. The State explained that it had asked Officer Wolfenbarger to re-examine Brown's jacket in an effort to "see if it would help support, contradict any of that kind of information with regard to the self-defense issue." (Tr. Vol. 3 at 119). Thereafter, the trial court again offered Mayberry's counsel the opportunity to prepare overnight and then cross-examine Officer Wolfenbarger the following day. In the alternative, the trial court stated that if defense counsel did not want to pursue that opportunity, then he could cross-examine the officer after the State had finished its direct examination. Mayberry's counsel chose the latter option, and the trial court overruled his objection.

[15] Officer Wolfenbarger testified that although the cotton twill was not the same fabric as Brown's jacket, his test and the results were not affected. Officer Wolfenbarger then testified that he had fired the Springfield handgun into the cotton twill and examined the cloth for "vaporous lead and lead particulates." (Tr. Vol. 3 at 122). Officer Wolfenbarger then compared his results with Brown's jacket and found that the hole in the back of jacket had "very minimal" lead or lead particulates. (Tr. Vol. 3 at 122). As a result, Officer Wolfenbarger concluded that the bullet that had created the hole in the back of Brown's jacket had been fired by a gun from a distance "further than 36 inches." (Tr. Vol. 3 at 123). Because the other two holes tested yielded "vaporous lead and also particulates throughout[,]" Officer Wolfenbarger concluded that the bullets had been fired by a gun from within twelve inches.

(Tr. Vol. 3 at 123). On cross-examination, Officer Wolfenbarger testified that his results were not inconsistent with a handgun being discharged in a small space and that the results did not disclose who had discharged the gun.

[16] Following the State's presentation of evidence, the defense presented testimony from a Mishawaka police officer and Mayberry. Mayberry testified that after he entered the bathroom, he had been verbally and physically accosted by Brown, who was washing his hands. Mayberry stated that Brown had pulled a gun on him, and to defend himself, he had begun to wrestle with Brown. Mayberry explained that he had grabbed Brown's wrists and had struggled to disarm Brown. Mayberry then stated that during this struggle, the gun had discharged and had struck Brown several times. On cross-examination, Mayberry explained that he "didn't possess [a gun] nor did [he] aim it." (Tr. Vol. 4 at 130). He further explained that he did not pull the trigger and that the gun was in Brown's hand for all three shots.

[17] The jury convicted Mayberry of murder and the firearm enhancement. Thereafter, the trial court sentenced Mayberry to sixty-five (65) years for murder. The trial court then enhanced Mayberry's sixty-five (65) year sentence by ten (10) years for the firearm enhancement. Mayberry now appeals.

## Decision

[18] Mayberry argues that the trial court abused its discretion when it admitted into evidence testimony about test results which had been performed shortly before trial. As a preliminary matter, Mayberry has waived appellate review of his

argument because he makes no cogent argument and provides no caselaw to support his argument regarding the admission of evidence. *See State v. Holtsclaw*, 977 N.E.2d 348, 350 (Ind. 2012) (holding that the defendant had waived his argument by failing to appropriately develop or support it); *Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*. *See also* Ind. Appellate Rule 46(A)(8)(a) (requiring appellate arguments to be supported by cogent reasoning and citation to the authorities).

[19] Waiver notwithstanding, Mayberry has not met his burden of showing that the trial court abused its discretion. "'A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb the court's rulings only where the petitioner has shown an abuse of that discretion.'" *Bowman v. State*, 51 N.E.3d 1174, 1180 (Ind. 2016) (quoting *Isom v. State*, 31 N.E.3d 469, 482 (Ind. 2015)). An abuse of discretion occurs only "'if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Bowman*, 51 N.E.3d at 1180 (quoting *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014)).

[20] Further, "[w]here the [S]tate seeks to introduce discoverable evidence at the time that that evidence is revealed to the defendant, defendant may seek either a continuance or exclusion of that evidence." *Cook v. State*, 675 N.E.2d 687, 690 (Ind. 1996). A continuance is usually the appropriate remedy. *Id*. However, the exclusion of evidence is proper where the State engaged in deliberate

conduct or bad faith or where introduction of the evidence would result in substantial prejudice to the defendant's rights. *Id*.

[21] Here, Mayberry has not established deliberate conduct or bad faith on the State's part. There is no evidence in the record, nor does Mayberry argue, that the State deliberately or intentionally avoided telling Mayberry about Officer Wolfenbarger or his testimony. Indeed, Officer Wolfenbarger was listed on the State's potential list of witnesses in October 2019 and again in December 2019. Furthermore, at trial, the State explained that it had requested that Officer Wolfenbarger perform the tests in response to Mayberry's voir dire questions that indicated that Mayberry was going to pursue a claim of self-defense. Upon learning of the officer's examination results, the State promptly provided the results to defense counsel by telephone and then provided the copies of the results the following morning. Under these circumstances, we conclude that Mayberry has failed to provide evidence of deliberate conduct or bad faith on the part of the State. *See Cain v. State*, 955 N.E.2d 714, 719 (Ind. 2011) (explaining that there is no error if the prosecuting attorney provides the defense with requested evidence as soon as the prosecuting attorney is in possession thereof).

[22] Mayberry has also not shown substantial prejudice to his rights. Here, Mayberry argues that the timing of receipt of the officer's findings prevented him from "provid[ing] any scientific basis to contradict the . . . information regarding the distance of the gun in the middle of the trial." (Mayberry's Br. 13). Although Mayberry objected to Officer Wolfenbarger's testimony, he did

not request a continuance, which is the appropriate remedy in such a situation. *See Cook*, 675 N.E.2d at 690; *see also Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000) (explaining that as a general proposition, the proper remedy for a discovery violation is a continuance). In fact, the trial court effectively offered Mayberry this relief by proposing to delay Officer Wolfenbarger's cross-examination until the following day. However, Mayberry's counsel did not take advantage of this opportunity and chose to proceed with cross-examination following the State's direct examination. Mayberry does not explain how his refusal to delay Officer Wolfenbarger's cross-examination resulted in prejudice to his rights.

[23]   Because Mayberry has not shown any deliberate conduct of bad faith by the State or substantial prejudice to his rights, his argument fails. Accordingly, the trial court was well within its discretion in allowing Officer Wolfenbarger's testimony.

[24]   Affirmed.

Kirsch, J., and Tavitas, J., concur.